# GENERAL FEDERAL CONSTRUCTION, INC. ET AL. V. D. R. THOMAS, INC.

[No. 213, September Term, 1982.]

*Decided November 4, 1982.*

The cause was argued before MORTON, LOWE and ADKINS, JJ.

*John C. Hayes, Jr.,* with whom were *Michael G. Scheininger, David W. O'Brien* and *Bonner, Thompson, O'Connell, Gaynes & Middlekauff* on the brief, for appellants.

Submitted on brief by *Christopher M. Kerns* and *Kerns & Klimek P.C.* for appellee.

LOWE, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Prince George's County which culminated in a $38,000 verdict for a subcontractor, D. R. Thomas, Inc. (Thomas), against the general contractor, General Federal Construction, Inc. (General) and, under a "payment" bond, The Hartford Accident & Indemnity Company (Company).

— limitations —

One of the issues, which gives us but momentary pause, arises from the fact that the suit regarding the insurer arose

under the "Little Miller Act", Md. Ann. Code, Art. 21, § 3-501, which has a one year period of limitations from the date of final acceptance of the work performed under the contract. Appellants complain that appellee initially sued only General and The Hartford Insurance Group (Group) but did not include Company until May 28, 1981 which, they allege, was over one year after final acceptance of the work performed under the contract. It follows, they contend, that as to Company, limitations was not tolled until the amended declaration adding Company was filed.

Factually they contend, that final acceptance of the work performed under the contract took place in March of 1980, "when the necessary electrical inspection was completed", pointing to extracted testimony as follows:

> "Q. Has there ever been a final acceptance on the Social Science Building, to your knowledge?
>
> A. I don't know whether the final acceptance has ever been given but, to the best of my recollection, they accepted the building when they moved into the building as far as substantial completion goes. There was one item wherein we had to give an electrical certificate, and we couldn't get that because there had been some pipes run over a switch gear, and I believe that was resolved sometime in March of 1980. And I would assume that that was by the State final acceptance because they at that time, I believe, agreed to pay us any and all monies.
>
> Q. Only after this final acceptance; is that correct?
>
> A. After the certificate was obtained."

"Final acceptance", for purposes of the accrual of a cause of action, is like the discovery rule, a mixed question of law and fact. The trial judge must determine factually when that occurred in order to apply the appropriate limitations law. Here the uncertainty of appellants' witness as to the facts relating to final acceptance was given calendrical certainty on cross-examination when appellee produced the electrical inspection certificate dated August 15, 1980.

"MR. HAYES [of counsel for appellants]: I will object.

THE COURT: Is that the electrical certificate for the Social Science Building?

THE WITNESS: Yes, sir, that is the certificate that we resolved, I believe, in March of 1980.

THE COURT: It wasn't issued until August?

THE WITNESS: From the date on that —

THE COURT: From the date on that, you have to assume it was issued in August?

THE WITNESS: Yes.

THE COURT: All right, 17 is admitted.

MR. KERNS [counsel for appellee]: Thank you.

> (Plaintiff's Exhibit No.
> 17 Admitted in evidence.)"

Although appellants did not inform us whether the court specifically addressed the limitations issue we infer from the result that the defense of limitations was rejected by the court. The evidence we have noted is clearly sufficient to support a holding that the cause of action did not accrue until August 15, 1980, Md. Rule 1086; *Moy v. Bell,* 46 Md. App. 364, 370 (1980), and limitations did not preclude the inclusion of appellant Company prior to that date, one year hence. We need not address appellee's supportive argument that the amendment including Company along with Group was simply a specification that fell within the umbrella trade name Hartford Insurance Group, encompassing Company among others.

— demurrers —

Appellants next allege that their demurrers should have been sustained because the respective counts of the Declaration lacked "the sufficiency of substance required by the Maryland Rules in that they do not provide facts sufficient to inform the defendant and the court of the claims advanced . . . ." The Declaration set forth in separate counts

that appellant General had subcontracted with appellee to supply labor and material subsidiary to General's contract with the State of Maryland. The labor and materials to be supplied under the subcontract (which was appended to, and incorporated in, the Declaration) were supplied by appellee. The breach alleged was that General had not paid either as contracted or for additions and changes under the contract.

Appellee further alleged a breach by General in a portion of the appended contract which gave appellee the opportunity to be present and submit evidence in any matter involving appellee's rights. That, said appellee, was breached when General sued the State under its prime contract involving appellee's labor and material, then dismissed the action against the wishes of appellee.

The counts involving Company added that it was responsible for General's nonpayment under its bond required pursuant to Md. Real Prop. Code Ann., § 9-113 (the "Little Miller Act").[1] It further alleged that Hartford was contractually responsible because it had taken control of General and made all management decisions, thus assuming responsibility for the ensuing indebtedness.

Relying on *Continental Masonry v. Verdel Constr.*, 279 Md. 476 (1977), appellants complain that the complexities of this case required a more detailed contention by appellee. They point in retrospect to the evidentiary facts proving the charges alleged and the apparent reasons underlying the failure to pay which were shown to be the delays by General which interfered with Thomas's work.

> "In essence, the Court permitted the case to go to trial based upon an Amended Declaration which, because of its lack of sufficiency of substance or specificity permitted DRT [Thomas] to offer proof on any alleged breach which DRT [Thomas] thought of at any time up to the close of its case."

Therein lies appellants' error. "To withstand a demurrer a party need only allege facts which, if proven, would entitle him to relief." *Hooke v. Equitable Credit Corp.*, 42 Md. App.

---

1. Amended, Md. Ann. Code, Art. 21, § 3-501 (1981 Repl. Vol.).

610, 616 (1979). There is no requirement of "specificity" which appellants equate with the "substance" requirement. Appellee alleged facts that would have proven a contract, its compliance and appellants' respective liabilities thereunder and General's breach by nonpayment.

That clearly set forth a cause of action:

If appellants desired specifics before demurring under Rule 345, they should have turned the page of the Maryland Rules to Rule 346, which provides that:

> "A party may demand, in writing, a bill of particulars whenever a pleading is so general as not to give sufficient notice to him of the claim or defense asserted by such pleading."

Having failed to do so, however, appellants still had all of the multitude of discovery procedures available to them to provide in detail the specifics of the claim. *Sommers v. Wilson Bldg. & L. Ass'n,* 270 Md. 397 (1973).

Demurrers are not demands for specifics. They are solely to provide a minimization test for a cause of action either where a question of law may be decisive of litigation or the facts alleged do not constitute a cause of action. The "precise rubric" itself provides that a mere informal statement of a cause of action will suffice and that it shall be "brief and concise and contain only such statements of facts as may be necessary to constitute a cause of action . . . ." Md. Rule 301 b.

Appellants' argument suggests that they are more concerned in retrospect with a variance; however, absent particulars which would have bound the pleader, Md. Rule 346 e, it would have been difficult to sustain an objection to evidence submitted as having gone beyond the allegations. Upon that question, however, having not been asked, we render no opinion.

— sufficiency of the evidence of damages —

Appellee's proof of damages consisted primarily of testimony indicating its estimate of minimal losses occasioned by

the delay allegedly caused by appellant General. Although the delay was nearly 9 months, it elected to attribute only 150 days, or 5 months delay to General. The total damages claimed were broken down into categories and each was explicated either by an office employee or the president of appellee.

Appellee explained item by item how it computed the costs of the job to establish a bid price for performance within a designated contract period; then it sought to show, item by item, the difference occasioned by the delay. A loss was claimed for materials amounting to $21,609 predicated upon a 11% increase in material costs arrived at by comparing prices within the contract period against those during the delay period. Another component of the claim was a $43,193.40 figure comprising a production loss on the job. That was derived by showing what the craftsmen employees could be expected to produce uninterruptedly and what was actually produced by virtue of the delay frequently causing skilled employees to do menial and unproductive make-work marking time until the obstacles were removed. Utilizing the expertise endemic to preparing bids and estimating costs, that loss was estimated at 25% of the labor costs, but reduced to 20% for purpose of computing damages. Supervision losses were estimated at $20,000, and justified despite salaried supervisors because their salaries were paid during the delay period, notwithstanding the reduced labor force. Supervision was required regularly not only for the limited employee force of appellee, but to determine day to day what could be done the morrow as General gradually removed the impediments deterring appellee's progress.

Other items, of which appellants complain, include overhead loss computations, including an item arrived at by what is "commonly known" as the Eichleay formula. As explained by appellants:

> "This formula is used to derive the home office overhead costs which are associated with a particular job. Under the Eichleay formula, overhead costs are computed by taking the ratio of the company's total billings for the contract period to

the billings for this particular contract. That percentage is then applied to the company's total overhead for the period to arrive at a per day figure of overhead allegedly attributable to this project. That per day figure is then multiplied by the total number of days of delay alleged to compute the total damages attributable to overhead."

Item by item appellants undercut by argument (as they attempted by cross-examination at trial to undercut) the basis upon which these claims were presented. Their contentions vary from indicating the inappropriateness of the item to this case, to the minimal evidentiary substantiation of an item, and complain between that some may even be overlapping. In short, for each of the items they claim that

"the trial court should not have *considered them."* (Emphasis added).

But that is not the issue they raise on appeal. Whether these items were properly admitted to show damages is an evidentiary question, and we are not aware from the briefs here, or extract of the trial, that appellants object now, or ever objected below, to the admissibility of this evidence. Even if improperly admitted without objection, once the evidence comes in — without objection — the factfinder can and should properly "consider them." What consideration he gives them, however, is subject to appellants' ability to dissuade him by cross-examination, argument and contrary evidence. Appellants skillfully utilized all three. The fact that the judge only allowed $38,000 damages of the $139,837 claimed indicates that they were quite persuasive.

We cannot interfere with the trial judge's weighting of evidence, nor do we even know the weight he ascribed to what items. Clearly more were discarded as unpersuasive than were adopted as convincing. Even if that were reversed, we can look only to whether the judge was clearly erroneous, and then must give due regard to his opportunity to judge the credibility of the witness. Md. Rule 1086. Because he was not called upon to decide the legal issue of admissibility of

these items of evidence he committed no error of law. Because he had evidence before him from which he could have arrived at his verdict, his judgment was not clearly in error. *Ibid.*

Since the next two questions relate solely to Company's individual liability, it seems appropriate first to address appellee's cross-appeal which, simply stated, is that it did not get enough. What we have said regarding appellants' complaint on sufficiency of the damages evidence is a quick answer to appellee as cross-appellant. Beyond that, we note that cross-appellant admits that while the constituent elements comprising the judgment are not discernible,

> "the $38,000 judgment may bear some relation to the $80,000 settlement obtained by General Federal from the State of Maryland in satisfaction of its suit . . .",

the suit in which cross-appellant's promised participation was precluded.

To the extent that either party is hampered by the inability to discern the basis of the trial judge's damage determination, we note that they point to no effort made to obtain a statement of grounds or the basis he utilized to determine the damages as is required of him by Md. Rule 18 b. Absent such motion, neither appellants nor cross-appellants may complain upon appeal, *Gerard C. Wallace Co. v. Simpson,* 267 Md. 702 (1973), and are practically hampered in arguing that a judge improperly considered, or failed to consider, items which we know not to have been overlooked or to have been included in the judgment. The plague of inertia falls upon both their houses.

The two final issues of which appellants complain primarily concern Company as the insurer under the bond. By semantic evolution appellant contends initially that it is not liable for "delay damages" under the Little Miller Act presumably because such damages as here proven are "nothing more than" lost profits, which according to Company have never been permitted even under the federal act upon which the Maryland Act is predicated.

Maryland Courts have had but little opportunity to interpret the Maryland Act. In the limited sense that we have done so, of necessity, we looked to many sources including decisions under earlier Maryland contractor bond statutes and mechanics' lien law, *Peerless v. Prince George's Co.,* 248 Md. 439 (1968), and similar decisions from other states, *Bal. Co. Dep't v. Henry A. Knott,* 234 Md. 417, 424 (1964). The Court of Appeals has indicated that as a general rule for guidance in interpreting the Little Miller Act, it will look to federal decisions construing the Miller Act, 40 U.S.C. § 270a (1970). *Montgomery County v. Glassman,* 245 Md. 192, 205 (1967). But, as we have often said, federal decisions (except those of the Supreme Court) are not controlling here and Maryland courts may refuse to follow federal decisions where the court believes the purpose of the State statute differs. *Williams Constr. v. Constr. Equip.,* 253 Md. 60 (1969); see generally Cahn, *Contractor's Payment Bonds In Maryland,* 32 Md.L.Rev. 226 (1972-73). There are, however, several Maryland cases in which the courts have analogized to federal decisions construing the Miller Act. *E.g., Montgomery County v. Glassman, supra; Stauffer Constr. Co. v. Tate Eng'r,* 44 Md. App. 240 (1979).

Appellant relies on several federal cases construing the Miller Act to support its argument that neither delay damages nor lost profits are recoverable under a Little Miller Act bond. Close analysis of the facts of these federal cases reveals little support for appellant's argument apropos the facts of the present case. Before analyzing these cases, however, we should carefully extract from the Act that which the Legislature has explicated without ambiguity.

The Little Miller Act requires as a condition to contracting with the State for construction exceeding $25,000, that the contracting party post a "performance bond" and a "payment bond". The payment bond, with which we are here concerned is "for the protection of all persons supplying labor and materials." Indicative of the breadth of that coverage is the requirement that before the contractor can receive final payment for his work, he must certify payment to his subcontractors and suppliers "in accordance with his

contractual arrangements with them." Md. Ann. Code, Art. 21, § 3-501 (a) (2).

Not only do we find a dearth of language to support appellant's view that recovery is limited to the subcontractors' costs of labor and material, the in-accordance-with contractual-arrangements language is indicative of the contrary purpose, unless those contractual arrangements did not anticipate some profit for the subcontractor or the supplier. A similar breadth of language is used in § 3-501 (c) regarding *[s]uits on payment bonds* which authorizes persons furnishing labor or material to sue on the bond "for the sum or sums justly due him." Even if such language does not expressly anticipate "lost profits" as contended by appellant, there is nothing in the Act nor in its history to indicate that the increased costs of performance stemming from delays is excluded from the coverage of the Act.

Since that semantic distinction disturbs appellant we find no reason to decide whether purely "lost profits" are recoverable since that is only indirectly at issue here, and as pointed out the substantial variance between the value of the total losses evidently submitted of $139,837 and the award of $38,000 leaves an ample area to indicate the likelihood that the judge may not have included lost profits in the recovery. We will not, therefore, be beguiled by appellants' sophistic assertion that "the claim, in essence, is one which says we did not make as much as we expected. It is an allegation of lost profits."

We have already pointed out that there was evidence admitted substantially without evidentiary objections indicating the difference between the labor costs without delay and with the delay, the difference between material costs without delay and after the delay and the additional costs required for overhead and supervision during the period of delay. The contract as submitted by appellee was predicated upon material and labor requisite to complete defined specifications within a scheduled period of time.

Since the contract provided that "[d]elays in completion of the work are INEXCUSABLE . . ." appellee understandingly predicated its bid upon precise calculations of material and

labor costs within the rigid time frame. When delays were thrust upon it increasing its material costs and labor expenditures these amounts were "sums justly due" appellee "in accordance with his contractual arrangements."

Its "contractual arrangements" were also breached when appellants denied it the presumed right to negotiate in the State settlement which arose out of this contractual fiasco, as the initial contract was breached not only by nonpayment but by interfering with appellee's right and duty to complete performance according to the schedule provided by appellant General.

Regarding appellants' reliance upon federal authority it will be recalled that they urge that a subcontractor may not recover under a payment bond for damages caused by the contractor's delay. But the case cited for support distinguishes between a claim for the value of labor and material furnished pursuant to the subcontract and a claim for damages for breach of the subcontract. *United States ex rel. Moran Towing Corp. v. Hartford Accident and Indemnity Co.,* 204 F.Supp. 353, 356 (D.R.I. 1962). The court allowed recovery for labor and materials supplied. The court disallowed an action "against the surety on a Miller Act bond for the recovery of damages caused by the *negligence* of the prime contractor." *Id.* (emphasis added).

Appellants also state that a subcontractor may not recover for profits lost due to delay, citing in support *Arthur N. Olive Co. v. United States ex rel. Marino,* 297 P.2d 70 (1st Cir. 1961). At first glance this case does support this proposition but the facts of the case reveal that the lost profits disallowed were for work *unperformed* by the subcontractor due to the contractor's breach. The court recognized that a subcontractor was entitled to recover reasonable profit on extras furnished at the general contractor's direction and with its acquiescence, *id.* at 73, and the limit on such recovery was not merely the out-of-pocket losses. The case at hand differs slightly from these facts in that there was no express direction by General to Thomas to do the work at the escalated price. General did acquiesce however, by not protesting Thomas' numerous letters informing General of its

increased costs due to the delays. That General was aware of Thomas' increased costs due to the delays is unquestionable as is the fact that General specifically directed Thomas to add more labor power to try and get the job back on schedule. Further, the terms of the general contract incorporated by reference into the subcontract, do not absolve either the government or the contractor of liability for damages caused by delay.

Delay damages have not been recoverable where the contract contained no clause forbidding delay and where the increased costs were found to be the result of a unilateral contract modification. *United States ex rel. Mobile Premier Concrete, Inc. v. Sante Fe Engineers, Inc.,* 515 F.Supp. 512, 516 (D.D. Colo. 1981). Recently another federal court allowed a subcontractor to recover on the bond, damages from delays for which the subcontractor was partially responsible. *United States ex rel. Heller Electric Co. v. William F. Klingensmith, Inc.,* 670 F.2d 1227, 1232 (D.C. Cir. 1982). The subcontractor was allowed to recover the damages suffered due to the contractor's delays. The court stated that a contractor implicitly promises to provide "such working conditions as may be necessary to allow its subcontractor to carry out its obligations under the contract." *Id.* at 1230. A subcontractor can recover for delays resulting from breach of the contractor's obligation. The court did not go into the terms of the contract or whether a delay clause was part of the contract. Due to the similarity of facts the holdings of the above cases appear somewhat difficult to square. Nevertheless, two District of Columbia federal district court cases did just that. Both cases involved facts similar to those in the case at hand, and in both the subcontractor was permitted to recover on the bond for delay damages. *United States ex rel Mariana v. Piracci Construction Co., Inc.,* 405 F.Supp. 904 (D.D.C. 1975); *United States ex rel Otis Elevator Co. v. Piracci Construction Co.,* 405 F.Supp. 908 (D.D.C. 1975). In allowing such damages [2]

---

**2.** (1) Increased costs of material, (2) increased costs of labor due to inefficient performance and higher wage rates than originally contemplated, (3) increased costs of field operations, and (4) increased indirect expenses composed of home office overhead.

the *Mariana* court relied on the purpose of the Miller Act to protect those whose labor and materials go into a public project. The issue is thus narrowed to "whether the claim for relief is based on actual expenditures for labor or materials utilized in the performance of the subcontract" and the claim is not defeated "by such technical exercises as analyzing whether the claim arose within or without the contract or by determining if the added costs were indispensable to satisfactory contractual performance." *Mariana,* 405 F.Supp. at 907.

In *Otis Elevator, supra,* the court held the surety liable for the subcontractor's out-of-pocket expenses, but not for lost profits resulting from delays caused by a third party. The court noted that the subcontract did not absolve the contractor from liability and the prime contract did not shelter the government. These two facts, present in the case at hand, distinguished *Otis Elevator* from *L. P. Friestedt Co. v. U.S. Fireproofing Co.,* 125 F.2d 1010 (10th Cir. 1942). *Friestedt,* relied on by appellants, held that delay damages are not recoverable against sureties under the Heard Act.[3] But, as the *contract* in *Friestedt* absolved the government from liability due to delay, it is inapposite to the case at hand.

Applying the results in these cases to the facts in the present case indicates that Thomas should be able to obtain a judgment against the surety for increased costs[4] of performance due to the delays, but not for profit on these increased costs.

This is the distinction which appears to be lost upon appellants as they seemed to espouse that before appellee can recover under the Little Miller Act it must absorb as its own loss any anticipated profit under the original contract. That is not what we glean from the federal cases. The statute does not require the loss of profits within the "contractual arrangements" before it can recover for the actual loss

---

3. 40 U.S.C.A. § 270, predecessor to Miller Act.

4. Out-of-pocket expenses have included office overhead, labor inefficiency but not profit on these. United States ex rel Mariana v. Piracci Construction Co., Inc., 405 F.Supp. 904 (D.D.C. 1975).

expended for material and labor occasioned by the delay. The "lost profit" that is proscribed by *Friestedt* is on the additional costs of performance, not that which was due "in accordance with his contractual arrangement."

This distinction is recognized in *United States ex rel Moran Towing Corp. v. Hartford Accident and Indemnity Co.*, supra, where the court allowed a quantum meruit recovery. In denying a surety's motion to dismiss a complaint under the Miller Act bond, the court stated:

> "It is generally held that bonds furnished under the Miller Act are to be liberally construed . . . . In accordance with this rule, the courts have construed said Act liberally to allow recovery upon bonds provided thereunder . . . . But despite this rule of liberal construction, it is generally held that a subcontractor has no remedy against the surety on a Miller Act bond for the recovery of damages caused by the negligence of the prime contractor, the principal on such a bond . . . . Similarly, while a subcontractor may undoubtedly maintain an action against the prime contractor for loss of profits caused by the latter's breach of contract, the courts hold that he may not maintain such an action against the surety on the prime contractor's bond furnished under the Miller Act. . . .
>
> *However, there is a distinction between a claim for the value of labor and materials furnished by a subcontractor in the prosecution of the work as a result of the breach or default in the performance of his contract by the prime contractor, and a claim for damages for the breach of such a contract. Where the claim asserted is for the value of labor and materials furnished, the subcontractor may maintain an action against the surety on such a bond."*

(Emphasis added, citations omitted). *Id.* at 355-356.

— Company control over General —

While it is of little solace to appellants, we do agree with their final theory that appellee offers a slender reed as its

right to recover against Company by arguing that "Company exerted control over General Federal so as to make it liable for the delay damages incurred by D. R. Thomas." Appellee supplies no authority suggesting such legal liability in Maryland, nor even from elsewhere such as might be persuasive to us. To the extent the encyclopedic support quoted might apply factually here (a factual predicate which we find unsupported by the record), Maryland law, as pointed out by appellants, does not permit such disregard of a corporate veil. *Bart Arconti & Sons v. Ames-Ennis,* 275 Md. 295 (1975); *Damazo v. Wahby,* 259 Md. 627 (1970). Once again, however, appellants' failure to invoke Rule 18 makes their victory a hollow one since we have determined that recovery against Company was allowable under the Little Miller Act theory. Absent indication to the contrary, we must presume that the judge reached the result for the right reason. *I. W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 19-20 (1975).

*Judgment affirmed.*
*Costs to be paid by appellants.*