DIENER ET AL. *v.* CUBBAGE ET AL. t/a C & C
Construction Company

[No. 92, September Term, 1970.]

*Decided November 13, 1970.*

556

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Barry Zaslav,* with whom were *Blondes & Zaslav* on the brief, for appellants.

*Carl Harrison Lehmann,* with whom was *Joseph J. Bonner* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Prince George's County enforcing a mechanics' lien. The appellees, Lewis and David Cubbage, were sub-sub-contractors for certain carpentry work on a townhouse project. The general contractor was Towne Development Company, Inc. whose sole stockholders are appellants Milton and Walter Diener, and Harold Reznick. These three men and their wives (also appellants) own the land in Prince George's County upon which the project was being constructed. Towne subcontracted with Suburban Carpentry Corporation to do the necessary carpentry work, and Suburban sub-subcontracted the job to the appellees for an agreed price of $460 per unit for 141 units or a total of $64,860. The appellees began working in January of 1966 and were paid directly by Suburban for work completed. Suburban in turn billed Towne but at a unit price of $590.32. The appellees walked off the job on October 6, 1966, after Suburban had failed to pay them for several weeks. Up to that point, the appellees had received $51,933 from Suburban and are seeking to collect on a mechanics' lien $8,967. This figure represents the difference between $64,860 and $51,933 which is $12,927,

less a $3,960 credit for uncompleted work. The trial court ordered payment on the Cubbages' lien for this amount.

The appellants contend that the lien was void and the trial court was in error for the following reasons:

I. The notice of intention to claim a lien was not in conformity with the requirements of Art. 63 of the Maryland Code.

II. The measure of damages should have been based on the reasonable value of the work performed and not on the price in the contract between the subcontractor and the sub-subcontractors, an agreement to which the appellants were not parties.

III. Appellants were not allowed a proper set-off.

Finally, they question whether appellees, as labor subsubcontractors, are among those persons entitled to relief under the Maryland Mechanics' Lien Law. If so, is their status affected by the fact that the general contractor fully paid its own subcontractor? We will consider these contentions in order.

I

Art. 63, § 11 provides in substance that written notice of an intention to claim a mechanics' lien shall be given to the owner if he is a resident of the county in which the construction is taking place. Art. 63, § 12 allows such notice to be posted on the building if the owner is absent.

The appellants concede, as well they should, considering the previous decisions of this Court, that the posting of notice is authorized when owners are not residents of the county in which the construction site is located. *Jakenjo, Inc. v. Blizzard*, 221 Md. 46, 155 A. 2d 661 (1959); *Dente v. Bullis*, 196 Md. 238, 76 A. 2d 158 (1950); *Bounds v. Nuttle*, 181 Md. 400, 30 A. 2d 263 (1943); *Hensel v. Johnson*, 94 Md. 729, 51 A. 575 (1902); *Kenly, Use of Otto, v. Sisters of Charity*, 63 Md. 306 (1885). However,

the owners contend that the Cubbages have failed in their affirmative duty to prove this non-residency. *Bounds v. Nuttle, supra.* The appellees argue that they have satisfied this burden through the uncontradicted testimony of one of their witnesses, Mr. Miazga. He stated that none of the appellants lived in Prince George's County but rather all resided in the District of Columbia, with the exception of Reznick, a Montgomery County resident. This testimony alone is sufficient to sustain the chancellor's finding that the posted notice complied with the statutory requirements.

We cannot help but observe that when the appellant Reznick testified he failed not only to refute Miazga's testimony but in fact confirmed it as far as his own non-residence was concerned. It seems inconceivable that had any of appellants resided in Prince George's County, Reznick would not have been quick to point this out in his testimony, and thus bring this litigation to an abrupt halt. *District Hgts. Apts. v. Noland Co.,* 202 Md. 43, 50-51, 95 A. 2d 90 (1953).

A final point on the question of notice involved the meaning of the word "addressed." The appellants argue that the notice was not addressed to the owners since it contained only their names and not where they lived. This at best is a specious argument. In *Kenly, supra* at 310 the Court said:

> "The notice that is placed on the building must be of the same character as that personally served. It must be addressed to the owner or agent."

Since the word "addressed" is not used in Art. 63 appellants apparently base their argument on the *Kenly* case. However, they misinterpret the contextual meaning of the word. Even a casual reading of *Kenly* indicates that the term was used in the sense of naming the person to whom the notice was directed. The Court said at page 310: "Nor can we see how a notice can be given to the owner in either mode, except by naming him." Since the

notice did contain the names of all the appellants and was posted in the presence of a competent witness, no more need be said on this point.

## II

The next question is one of first impression in this state. The appellants contend that since they were not parties to the contract between the subcontractor and the sub-subcontractor, they should not be bound by that contract price. Instead they claim they are liable only for the reasonable value of the labor performed. While this Court has not focused on this point, other jurisdictions have. In *Laird v. Moonan*, 32 Minn. 358, 363-64, 20 N. W. 354 (1884), the court said:

> "As between the immediate parties to a contract, the contract price fixed therein is, of course, the measure of liability; but it could not have been intended that the owner's contract carried with it an implied consent that the contractor should bind him to pay whatever he [the general contractor] might promise [a subcontractor] for labor or materials, or any more than the *reasonable* price or value." (Emphasis added.)

Similarly in *Christman v. Salway*, 103 Ore. 666, 676, 205 P. 541 (1922), the Oregon court said:

> "No rule is more firmly established in this state than, that where labor is performed or materials furnished at the instance of the contractor of the owner, and not to the owner himself, or to a common-law agent of the owner, the law fixes the amount for which a lien may be had, as the reasonable value of the labor or materials, and not the price which the contractor agreed to pay therefor."

This concept has also been affirmed in *Bangor Roofing v. Robbins*, 151 Me. 145, 116 A. 2d 664 (1955), *Quackenbush v. Artesian Land Co.*, 47 Ore. 303, 83 P. 787 (1906),

*Lanier v. Lovett,* 25 Ariz. 54, 213 P. 391 (1923), and by such authorities as Phillips, *A Treatise on The Law of Mechanics' Liens on Real & Personal Property,* § 204 (2d ed. 1883) and 10 Thompson, *Commentaries on the Modern Law of Real Propery,* § 5215 (1957). Reasonable value, then, is the measure of damages, but the contract price can be used in determining what those damages are. We are in agreement with those authorities which hold that while the contract is not binding on the owner, the contract price is nonetheless prima facie proof of the reasonable value, and the owner has the burden of introducing evidence to show unreasonableness. In *Lanier v. Lovett, supra,* the Arizona court said at page 63:

> "The price agreed upon for labor or materials between a subcontractor and the contractor, is, *prima facie,* the reasonable value, and if a contract is entered into for a specific sum for labor or material, and is complete within itself, a detailed statement of the account is unnecessary." Quoting from 18 R.C.L. 938, § 71.

A similar statement can be found in Phillips, *supra* at 204:

> "The owner, when the contract is not made immediately by himself or his duly authorized agent, but by his contractor, may show that the price agreed to be paid by the contractor was beyond the fair market value at the time; but, if there is no evidence to show that the materials furnished by a sub-contractor are worth less than the price agreed on between him and the principal contractor, he is entitled to a lien for this agreed price. The owner, when sued by a subcontractor, would be able to impeach the contract only for fraud or mistake. The contract in either case is admissible in evidence."

In addition, see Thompson, *supra.* In the case before us the appellants are liable for the contract price because

there was no evidence whatsoever that it was unreason-able. However, if it is any consolation to the appellants the contract price is a ceiling upon the lien claim. *Bangor Roofing v. Robbins, supra.* We also note briefly that even if the burden were on the appellees in the present case, a comparison of the two contracts (sub-subcontractor and subcontractor — subcontractor and owner) presents co-gent evidence of the reasonable value of the Cubbages' labor. Indeed, it would seem futile to argue that the con-tract between the appellees and Suburban was unreason-able, since the contract price between the appellants' cor-poration and Suburban for the same work was 25% higher. In any event there was sufficient evidence for the chancellor's determination that the contract price was the reasonable value of the work performed. We cannot say his finding was clearly erroneous. Md. Rule 886.

### III

The third question involves the problem of set-off. While both parties agreed that a set-off for the uncom-pleted work was justified, there was a dispute as to what the amount should be. The appellants argued that $9,-309.36 [1] was the proper figure, and submitted evidence which tended to support this claim. The appellees, on the other hand, contended that $3,960.00 was the proper credit and offered testimony to that effect. Whether the latter was a reasonable figure based on the legally ac-ceptable opinion of an expert witness, or, as appellants suggest, an "arbitrary" statement without foundation, was a matter for the chancellor to evaluate. It is true that when David Cubbage took the stand he admitted that some of his set-off allowances were "arbitrary," but on redirect examination he offered a sufficiently detailed ex-planation of how he arrived at these figures. In any event, the chancellor had before him controverted evidence. We

1. The figure $9,309.36 was arrived at by adding $6,022.36 paid to Suburban and $3,287.00 paid another contractor to complete the job after appellees left. Appellants obviously mis-added since they arrived at the total figure of $9,319.36, using the same numbers we do.

cannot say that his resolution of this dispute, by finding the proper set-off to be $3,960, was clearly erroneous. Rule 886.

## IV

The last and certainly weakest argument is so spurious that to even discuss it gives it a degree of credibility which it simply does not merit. However, since appellants do raise it, we will hasten to dispatch it. The appellants seem to suggest that the mechanics' lien law was not intended to cover labor sub-subcontractors, while conceding that materialmen who are sub-subcontractors are protected. They base their proposition on the fact that no Maryland case has squarely discussed the question of labor sub-subcontractors. But, after careful scrutiny of Art. 63, we find that it makes no distinctions between materialmen and laborers. This Court affirmed on several occasions that subcontractors are entitled to relief under the mechanics' lien law. The fact that these cases involved materialmen and not laborers was a quirk of fate and not conscious avoidance. So, if clarification is necessary on this point we hold that labor subcontractors are entitled to relief under the mechanics' lien law. The same obviously is true for sub-subcontractors as long as they have a valid lien claim. See *Eastover Co. v. All Metal Fabr.,* 221 Md. 428, 158 A. 2d 89 (1960).

The appellants' final contention is that, in effect, they are paying twice, once to Suburban, and a second time to the sub-subcontractor. However, it should be remembered that appellants were not completely helpless. They could have required a performance bond or they could have withheld payment until they were satisfied all laborers and materialmen had been paid. As our predecessors said in *Bounds v. Nuttle,* 181 Md. 400, 406, 30 A. 2d 263 (1943) :

"If their failure to protect themselves against an impecunious contractor causes them to have to pay twice for materials, it is their own fault. The mechanic's lien law was passed to cover just

such a situation and to protect material men. The theory of it is that the owner gets the benefit of the material, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go into the building, then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials."

*Palmer Park Ltd. v. Marvelite,* 255 Md. 121, 257 A. 2d 169 (1969) ; *T. Dan Kolker, Inc. v. Shure,* 209 Md. 290, 121 A. 2d 223 (1956) ; *Reisterstown Lumber Co. v. Reeder,* 224 Md. 499, 168 A. 2d 385 (1961). This statement is equally true whether applied to laborers or materialmen.

*Decree affirmed. Costs to be paid by the appellants.*