511 A.2d 1102

**VISCOUNT CONSTRUCTION CO., INC., et al**

v.

**DORMAN ELECTRIC SUPPLY COMPANY, INC.**

**No. 1550, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

July 14, 1986.

Mark S. Devan (Covahey & Boozer, P.A., on brief), Towson, for appellants.

Paul D. Bekman (Israelson, Jackson and Salsbury, Daniel S. Katz, Michael D. Berman and Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A. on brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and BISHOP and BLOOM, JJ.

GILBERT, Chief Justice.

The principal issue presented by this appeal is whether notice to a contractor by a materialman of nonpayment by a subcontractor was timely under Md.Ann.Code art. 21, § 3–501, the "Little Miller Act."[1]

The contractor, Viscount Construction Co., Inc. (Viscount), and its surety, Travelers Indemnity Co. (Travelers), contend that the materialman, Dorman Electric Supply Co., Inc. (Dorman), is precluded from asserting a claim upon the Viscount-Traveler bond because Dorman failed to mail a notice of claim to Viscount within ninety days of the last shipment of materials to Viscount's subcontractor, Coastline Electric Co. (Coastline). Judge Robert F. Fischer, in the Circuit Court for Howard County, ruled that the notice given by Dorman did comply with the "Little Miller Act" and that, consequently, Dorman was not barred from recovery on the bond. Possessed of a different view and patently dissatisfied with the decision of the circuit court, Viscount and Travelers appealed.

## The Facts

Viscount, a general contractor, entered into a construction contract with Howard County, Maryland, for the erection of a senior citizen activity center.

The "Little Miller Act"[2] requires the posting of a payment bond as a precondition to the awarding of a construc-

---

**1.** The "Little Miller Act," which is patterned after 40 U.S.C. 270b(a), is now codified as § 13–501 of Md.State Fin. & Proc.Code Ann. The federal act takes its name from Representative John E. Miller and was initially enacted in 1935.

**2.** Subsection a of the Little Miller Act, previously codified as Md.Ann. Code art. 21, § 3–501, provides, in pertinent part:
"[B]efore any construction contract exceeding $50,000 in amount is awarded by the State of Maryland, or by any county, city, municipal

tion contract by the State, or subdivision, if the amount of the contract exceeds $50,000. Since the contract in the instant case exceeded that sum, Travelers, at Viscount's request, furnished the labor and material payment bond. Coastline entered into a subcontract with Viscount whereby the former agreed to perform the electrical work on the senior center. Coastline purchased electrical supplies from Dorman in a sum totalling more than $26,000. Included among those materials was a central inverter[3] which was delivered to Coastline in July, 1982. After the delivery and installation of the inverter, it was discovered that the device did not have an Underwriter's Laboratory (U.L.) label of approval. Viscount immediately notified Coastline that the inverter could not be accepted without U.L. certification. Under the terms of Viscount's contract with Howard County, all electrical materials had to "be listed for the intended application in the U.L. Electrical Construction material list...." Coastline promptly informed Dorman about the missing U.L. label and suggested that in lieu of the label, Dorman obtain and supply a U.L. certificate of compliance,

---

corporation, town, board of education, or other political subdivision, public authority, or public instrumentality, or any officer, board, commission, or agency of any of the foregoing, to any person, he shall furnish to the State of Maryland, or to such county, city, municipal corporation, town, or other political subdivision, public authority, or public instrumentality, or to such officer, board, commission, or agency thereof, the following bonds which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':
....
(2) A payment bond executed by a surety company authorized to do business in this State, or the equivalent in cash, or other security satisfactory to the public body for the protection of all persons supplying labor and materials, including lessors of equipment to the extent of the fair rental value thereof, to the contractor or his subcontractor in the prosecution of the work provided for in the contract for the use of each such person."
This same language now appears in Md.State Fin. & Proc.Code Ann. § 13–501. *See* 1985 Md.Laws, ch. 12, § 1.

**3.** An inverter is a device for transforming direct current into alternating current. Its primary function is to continue to supply energy in the event of an electrical power outage.

an acceptable alternative. Dorman procured the certification from the manufacturer of the inverter and forwarded it to Coastline in November, 1982. Dorman put Viscount on notice on November 29, 1982, that Coastline had defaulted on its obligation to pay Dorman for materials. Payment not having been received by April, 1983, Dorman filed suit to recover on the bond.

### The Law

The "Little Miller Act" provides, in pertinent part:

"Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond or other security is furnished under this section and who has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on the payment bond ... for the amount ... unpaid at the time of institution of such suit and to prosecute said action to final judgment ...; provided, however, that any person having direct contractual relationship with a subcontractor of the contractor ... but no contractual relationship express or implied with the contractor furnishing said payment bond ... shall have a right of action upon the payment bond or ... *upon giving written notice to the contractor within 90 days from the date on which such person did, or performed the last of the labor or furnished or supplied the last of the material for which such claim is made....*" (Emphasis supplied.)

Viscount and Travelers assert that the last delivery of material by Dorman occurred on July 15, 1982, when it delivered the inverter to Coastline. It is contended that the U.L. certification was furnished merely to correct an "oversight ... [in] leaving off the U.L. label," and that delivery of the certification did not change the last delivery from July to November. Dorman's position, on the other hand, is

that the delivery of the "last of the materials" under the original contract was made in November, 1982, when it furnished the necessary U.L. certification.

The threshold question to be resolved is whether the U.L. certification is material supplied as part of the original contract. Case law in Maryland does not appear to have addressed this particular point, but there are several federal decisions construing the provisions of the Miller Act, 40 U.S.C. § 270b(a), which involve circumstances that are analogous to the case at bar. Although those cases are not controlling, they provide, nevertheless, some guidance in interpreting the State's "Little Miller Act." *See General Federal Construction, Inc. v. D.R. Thomas, Inc.*, 52 Md. App. 700, 709, 451 A.2d 1250, 1255 (1982).

Viscount and Travelers refer us to several cases construing the Miller Act, 40 U.S.C. § 270b(a), in a manner that supports the argument that the certification was not material furnished or delivered. *See, e.g., United States ex rel. Noland Co. v. Andrews*, 406 F.2d 790 (4th Cir.1969); *United States ex rel. Light and Power Utilities Corp. v. Liles Construction Co., Inc.*, 440 F.2d 474 (5th Cir.1971). Those cases hold that materials furnished for the purpose of correcting or repairing defects do not extend the notification period under the Miller Act. Particular reliance is placed by Viscount and Travelers on *United States ex rel. Light and Power Utilities Corp. v. Liles Construction Co., Inc.*, 440 F.2d 474 (5th Cir.1971). There it was held that when no replacements were supplied, the return of certain fixtures which failed to meet contractual specifications did not extend the notification period under the Miller Act. We think *Liles* is factually inapposite.

In determining whether materials supplied by a materialman were furnished for replacement, repairs, or as part of the original contract, courts should consider "the value of the materials, the original contract specifications, the unexpected nature of the work, and the importance of the materials to the operation of the system in which they are

used." *United States ex rel. Georgia Electric Supply Co., Inc. v. United States Fidelity and Guaranty Co.,* 656 F.2d 993 (5th Cir.1981).

Judge Fischer, after considering the original contract specifications and the relationship of the U.L. certification to the use of the inverter, ruled that the U.L. certificate of compliance was "material supplied under the original contract." He reasoned that since "the 90 day notice period did not begin to run until the certificate was delivered" in November, 1982, the notice of nonpayment was timely.

The question before us is a close one. Standing alone, the certification does not appear to be a "material" within the meaning of the act. Yet, viewed as part of the "big picture," that is, when seen in its relationship to the original contract, the certification is an absolutely essential part of the inverter. Indeed, without the certification, the inverter is no more than a pile of useless matter occupying space within the senior center. With the certification, the inverter is an integral part of the center—valuable equipment for use as a "back-up" in the event of a power outage. *See Andrews,* 406 F.2d at 792–93; *United States ex rel. General Electric Co. v. Johnson,* 310 F.2d 899 (8th Cir.1963).

We think Judge Fischer correctly decided the case. Although "[t]he purpose of the 90 day notice provision is to protect the prime contractor so that after 90 days he can safely pay a subcontractor," the overall objective of the requirement of the payment bond is to protect subcontractors and materialmen. *Stauffer Construction Co., Inc. v. Tate Engineering, Inc.,* 44 Md.App. 240, 245, 407 A.2d 1191, 1193 (1979), *cert. denied,* 286 Md. 753 (1980). Consequently, the "Act's provisions are to be liberally construed to protect persons whose labor and materials go into government projects." *Stauffer,* 44 Md.App. at 245, 407 A.2d at 1193, *cert. denied,* 286 Md. 753.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.