75748. HUDDLESTON CONCRETE COMPANY v. SAFECO INSURANCE COMPANY OF AMERICA.
(368 SE2d 117)

BIRDSONG, Chief Judge.

This is a suit by a materialman (Huddleston Concrete Co.) against the bond of the contractor (Williams Bridge Co., Inc.) filed after the subcontractor (Coastal Bridge Co.) defaulted with $34,078.61 left owing to Huddleston. The trial court granted summary judgment to the appellee bonding company (Safeco) on the basis that under OCGA § 36-82-104 (b) Huddleston was required to, but did not, give written notice of its claim to the contractor within 90 days from the last delivery. The trial court held that the evidence of both parties clearly shows the contractor "did not . . . assume Coastal Bridge's

contract obligations," and that Huddleston had no "direct contractual relationship, express or implied," with the contractor, so as to excuse notice.

In support of its case Huddleston presents the affidavit of its officer, Raven, who states under oath that the contractor first approached Huddleston to supply concrete to the contractor for its work on the I-675 project, whereupon Huddleston (apparently) quoted a price to the contractor. The contractor then asked Huddleston to supply concrete at the same rate to a subcontractor doing a portion of the contractor's work. Huddleston made a delivery to the subcontractor, Coastal Bridge, before it made a delivery to the contractor. Deliveries continued apace, with Williams Bridge paying for all the deliveries to it; Huddleston billed the subcontractor separately.

Ultimately Mike Williams, the principal of the contractor, met with Huddleston's officer Raven in Williams' home and told Raven that the subcontractor was about to declare bankruptcy. Raven told Williams that Huddleston had not been paid by the subcontractor for $34,078.61 in materials. Raven then told Williams that if the subcontractor was going to declare bankruptcy, Huddleston needed to notify the contractor's bonding company of the debt. Williams told Raven that he (Williams) had already by letter notified the bonding company of the debt. Thereafter Huddleston's officer, in a telephone conversation with Williams, learned of a written assignment to the contractor of retainage due the subcontractor, for the payment of six creditors including Huddleston. Raven states that "[b]ased on Williams' assurances to Affiant that Williams Bridge would pay Coastal's debt of $34,078.61 to Huddleston out of retainage after the project was complete, Affiant did not pursue a claim to the bonding company." Thereafter, Huddleston continued to deliver concrete to the contractor and was paid for those deliveries. Naturally, Huddleston did not receive payment out of the retainage for its deliveries to the subcontractor. Hence the parties find themselves in court, with the surety contesting the claim on grounds of no notice, pursuant to OCGA § 36-82-104. *Held*:

1. One thing must be settled first. The parties and the trial court have repeatedly referred to the statutory requirement as being that one with no "*direct* contractual relationship" with the contractor must give notice. Some federal cases interpreting the parallel Miller Act, 40 USCA § 270 (b), and a chief Georgia case also refer to this necessity of the supplier to prove a *direct* contractual relationship with the contractor in order to dispense with notice. *Porter-Lite Corp. v. Warren Scott Contracting Co.*, 126 Ga. App. 436, 438 (2) (191 SE2d 95); see *United States v. Hesselden Constr. Co.*, 404 F2d 774 (10th Cir. 1968). This is not what the statute says. It says: "(b) Every person entitled to the protection of the payment bond . . .

shall have the right to bring an action on such payment bond . . . *provided, however*, that any person having direct contractual relationship with a subcontractor, but *no contractual relationship express or implied with the contractor* furnishing such payment bond, shall have the right of action upon the payment bond upon giving written notice to the contractor within 90 days from the day [of the last delivery]. . . ." (Emphasis supplied.)

Therefore, it is clear that the statute does not, as the surety repeatedly contends and as the trial court held, require the appellant to prove a *direct* contractual relationship with the contractor in order to dispense with notice. The distinction is obvious.

The 90-day notice requirement protects the contractor by fixing the date beyond which he will not be liable for subcontractor debts; but this object is "subsidiary" to the main purpose of the whole act, which is to protect the materialmen. *Noland Co. v. Allied Contractors*, 273 F2d 917, 920-921 (4th Cir. 1959). See also *American Cas. Co. v. Southern Materials Co.*, 261 F2d 197, 200 (4th Cir. 1958). Therefore, any ambiguity in the act should be resolved in support of the main object of the whole law, which is to protect materialmen. *Noland Co.*, supra at 921.

Moreover, the Georgia act giving materialmen the right to sue on the contractor's bond on public works projects, is a remedial law and therefore is to be liberally construed to secure that object. See *United States v. James Stewart Co.*, 195 FSupp. 715, 716 (1961); *United States ex rel. Hargis v. Md. Cas. Co.*, 64 FSupp. 522, 526 (1946); *Carey v. Giles*, 9 Ga. 253. To put a finer point on it, this "liberal construction" has also been interpreted to mean that in construing a remedial statute, limitations which would take away the right from one to whom the statute gave it, must be express and not subject to varying interpretations. *Pullen v. Otis Elevator Co.*, 292 FSupp. 715 (1968). This means that the appellant's right to maintain an action on the bond in this case will not be governed by a greater or different limitation than the statute expressly provides. No more should be engrafted onto the term "[implied] contractual relationship" than is clearly said.

The purpose of the notice requirement is to protect the contractor, so that he may with impunity pay subcontractors if no notice of claims by materialmen and suppliers has been filed. *United States v. James Stewart Co.*, supra. Therefore, at the very least, whatever it means, the precise language of the statute indicates in policy that if in the circumstances of the case the materialman has such a relationship with the contractor that the contractor is bound to know of the claim, or especially bound to pay it, the 90-day notice is not required. In interpreting the same requirement in the Miller Act, the federal court in *United States v. James Stewart Co.*, supra, considered it sig-

nificant that a course of dealing among contractor, subcontractor and materialman provided the contractor with "more notice of the claim than it would have had if [the materialman] had merely complied with the notice provisions of the Miller Act," and that if the materialmen did not give notice, nevertheless, the contractor was not prejudiced. In that case there was no agreement by the contractor to assume the subcontractor's debt, but it was found that the course of dealings of the parties created an "implied contract" when the contractor, with full knowledge of the claim, urged the materialman to continue deliveries to it after the subcontractor's default and promised to take care of the account. Id. pp. 718-719. Other federal cases have interpreted situations involving something less than a direct, express contract between materialman and contractor, as being nevertheless an implied contractual relationship within the meaning of the whole act as liberally construed. See *United States v. Thacker Constr. Co.*, 478 FSupp. 299 (1979); *United States v. Md. Cas. Co.*, 64 FSupp. 522, supra.

It seems clear that the phrase "no contractual relationship, express or implied with the contractor" is carefully contrived to avoid any implication that anything so strong as a direct, definite contract or an assent or a meeting of the minds, is required. Some cases have held the term amounts to a requirement that there be an *implied-in-fact contract*, which after all is a true contract and requires a meeting of the minds. *United States v. Md. Cas. Co.*, supra; 17 CJS 560-562, Contracts, § 4. But logic and the underlying policy of the act dictate the conclusion that if the legislature had intended anything so strong as a true contract to be proved, it would have used those words so handy at their disposal, such as "direct," "contract," "agreement," and a few others. Liberally construed to effect the remedial purposes of the act, the term refers to a status or duty *implied-by-law* (id. p. 563) and treated as a "contractual relationship" through legal fiction for purposes of giving the materialman the remedy of the right of action on the bond. See generally 6 Encyclopedia of Ga. Law 92, Contracts, § 41. A "contractual relationship" is not necessarily exactly the same thing as a "contract." Thus, within the meaning of OCGA § 36-82-104, a course of dealing between the contractor and materialman that does not amount to a direct contract or agreement at all, might establish an indirect *relationship* that implies a contractual status imposed by law. It is difficult to get much more than that out of the phrase "no contractual relationship, express or implied."

Moreover, if we concede for the moment that the language requires an assent, an actual implied-in-fact contract, still this language is not in the least particular about what *kind* of contract is required to dispense with notice. The statute says "any person having . . . *no* contractual relationship," as in "not one," "not any," or "without

any." No basis exists to leap to the assumption that by this contrivedly casual language the legislature meant to say notice is excused only if the materialman has a direct agreement with the contractor *to pay the subcontractor's debt.* To the contrary, the entire passage assumes, that as far as the debt is concerned, the materialman's "direct contractual relationship" is with the subcontractor. Obviously, then, the link with the contractor is more tenuous, since that is the whole reason for the existence of a statute giving relief on a contractor's bond to those who otherwise would have no relief because their direct contract was with someone else.

As to what kind of "[implied] contractual relationship" is required, this being a statute seeking to give the creditor a claim on the contractor's bond while devising a means to protect the contractor, the policy is served by judging whether the materialman's "[implied] contractual relationship" with the contractor, whatever it is, is sufficient to give him actual or constructive notice of the subject claim.

In an early case, *United States v. Praught*, 270 F2d 235 (1st Cir. 1959) (which also thought for some reason the statute said notice was excused of one with "direct contractual relations" with the general contractor, id. p. 237) the federal court held that notice was not excused on the basis of a separate direct contract between contractor and sub-subcontractor involving other aspects of the work project. However, this holding was premised on the fact that such a relationship, though direct, "did not operate to increase the probability of notice to [contractor] of [subcontractor's] obligation to [the] plaintiff." Id. at 238. The court held: "These considerations [the object of protecting the contractor] lead us to believe that the intention of Congress was that notice of claim is necessary unless contractual relations, express or implied, between the prime contractor and the claimant existed *with respect to the job out of which the claim sought to be enforced against the prime contractor and his surety arose.*" (Emphasis supplied.) Id. at 238. But Congress could easily have said this if this was its intention. In the requirement of notice from one "with no contractual relationship with the contractor, express or implied," particularly when juxtaposed to the requirement of a "direct contractual relationship" with the subcontractor, we find no expression of intent as to what kind of "contractual relationship with the contractor express or implied," is needed. It is more logical, and less a strain on the language of the statute, to say that the policy of the act is that such contractual relations provide the contractor with a "means of knowing the [particular liability of his subcontractor]," or "operate to increase the probability of notice of [the contractor] to [the sub-subcontractor]" (id. at 238), both of which were lacking in the *Praught* case.

In *United States v. Van de Riet*, 316 F2d 912 (4th Cir. 1963),

cited by the appellee, the only nexus between the contractor and the materialman was the contractor's acknowledgment or recognition of the subcontractor's assignment of proceeds to the materialman. This *mere knowledge of an assignment* was without significance to create an implied contractual relationship of any kind between contractor and creditor; but moreover, in that case, the contractor did not even know the subcontractor's debt was unpaid. Id., p. 915. There was nothing at all to give the contractor notice of a claim, and no relationship that might have advised him. The holding in *Van de Riet* is a holding that there was no contract of *any kind* which would dispense with notice. That case was therefore poor authority for the decision in *United States v. Hesselden Constr. Co.*, supra, also cited by the appellee surety, where the facts were somewhat different and strongly suggested not only an implied contractual relationship but that the contractor knew of the unpaid debt. Worse, this federal court case showed the misapprehension that the statute required a showing of a *direct* contractual relationship between contractor and materialman to dispense with notice. Id. p. 777. Therefore, its ultimate conclusion that notice was required because "the trial court was correct in determining that no *direct* contractual relationship exists," is suspect. (Emphasis supplied.)

In *United States v. Md. Cas. Co.*, supra, there were circumstances clearly showing a direct agreement of the contractor to pay the subcontractor's debt, but that there might be such a sufficient relationship in a case is no cause to assume that a direct agreement to assume the subcontractor's debt is necessary in every case to dispense with notice.

In a recent federal case, the court went so far as to hold that a claimant does not even come under the Miller Act in the first place unless he has a direct contract with the contractor in which the contractor assumes the subcontractor's debt. *United States &c. Metal Mfg. v. Fed. Ins. Co.*, 656 FSupp. 1194 (1987). If this were so, and if that characterization of the provision were correct, then in providing that claimants with "no [direct] contractual relationship, with the contractor express or implied" must give notice, Congress did a vain thing, since obviously such persons could not claim under the bond in any event.

The federal court decided that case without following the words of the statute, but by springing forth from a "general proposition established by the cases . . . that a direct contractual relationship requires that the contractor actually assume responsibility to pay for the materials provided by the materialman." Id. p. 1197. But there is no such "general proposition established by the cases"; all of those cases referred to either misread the word "direct" into the statute or simply hold that in the facts in the particular case, the circumstances

do not amount to a sufficient contractual relationship, whatever that is.

We therefore are not persuaded to put much stock in cases which misread the statute or whose facts are very different. Where it was said in *Porter-Lite Corp.*, supra at 438 (2), that "[u]nder [OCGA § 36-82-104] it is required that one . . . who has no *direct contractual relationship with the contractor* who furnishes the payment bond, shall have a right of action on the bond 'upon giving written notice to said contractor . . .'" we were in error. (Emphasis supplied.) Since one judge (Judge Deen of this division) concurred in *Porter-Lite Corp.* in judgment only and not in all that was said in the opinion, it is physical precedent only and not binding precedent (Court of Appeals Rule 35 (b)). See OCGA § 15-3-1 (d). The statute does not require a "*direct* contractual relationship" between contractor and materialman to dispense with notice, and it does not prescribe or indicate what *kind* of "contractual relation express or implied" will dispense with notice. The statute presumes, as its reason for existence, that the direct relationship is with the subcontractor, and the contractual relationship with the contractor is more remote. A liberal construction, in favor of the remedy given by this remedial statute, requires only that the relation be such as gives the contractor the protection the notice requirement would serve. Therefore, a "contractual relationship, express or implied" is sufficient to obviate notice if it "operate[s] to increase the probability of notice to the [contractor] of the [subcontractor's] obligation to the [materialman]," or give the contractor a "means of knowing" the particular liability of the subcontractor to the materialman. *United States v. Praught*, supra, p. 238.

If what appellant's officer states is true in this case, the appellant's entire participation in the I-675 project, including its supplying the subcontractor, was done at the behest of the contractor. At the contractor's request, appellant supplied the contractor and agreed with the contractor to supply the subcontractor at the same rate. When the subcontractor was about to default, the contractor's president stated to the materialman's officer that he had already notified his company's bonding company of the subcontractor's debt, thus assuring Huddleston the contractor knew of the claim. After the subcontractor's default, the contractor informed appellant of the agreement whereby subcontractor had assigned all retainage to six creditors, and had assured appellant it would be paid out of the retainage. This additional fact ensures that the contractor had full knowledge of the claim. After the subcontractor defaulted, the contractor also assumed the subcontractor's portion of the project, and appellant continued to supply material to the project.

If all this is true, the circumstances may amount to a course of

dealings that raise the status of an implied-by-law "contractual relationship" between contractor and Huddleston. Even if we were to view the language to require an implied-in-fact contract or agreement, it is clear the contractor and Huddleston had one of their own, which in the factual circumstances operated to give the contractor the full knowledge of Huddleston's claim against the subcontractor, which knowledge is the object of the notice requirement, and to impose upon the legal obligation of the surety to pay, which is the object of the act.

In view of this ruling, it is unnecessary to determine Huddleston's contention that a direct contractual relationship with the contractor arises from Huddleston's position as a third-party beneficiary of the assignment of retainage executed by the subcontractor to the contractor.

2. The appellee repeatedly adjures us to notice that the contractor has paid for all deliveries to itself and the only debt at issue here is that of the subcontractor. But the contractor's own dealings with the materialman are what establish that they had an implied contractual relationship, and in this case, assuming Huddleston's version of events to be the truth, this relationship was sufficient in the factual circumstances to give the contractor notice of the claim against the subcontractor.

3. The appellee also argues that the assignment of retainage by the subcontractor to the contractor is not sufficient to show an implied (direct) contractual relationship. No doubt this is true, but the "relationship" is not grounded upon that assignment. It is grounded on the entire relationship between Huddleston and the contractor, including the contractor's having asked Huddleston to supply the project both before and after it supplied the subcontractor and the discussions about the debt between Huddleston and the contractor's principal, and Williams' assurance that Huddleston would be paid out of the retainage, even though there apparently was not enough of it to go around.

4. While the course of dealings between the parties may prove an implied contractual relationship that, while falling short of an actual express or implied *agreement*, is yet sufficient to have clearly put the contractor on notice of this claim, we cannot hold there was such a relationship as a matter of law and beyond any material issue of fact, because questions remain as to whose version of events is correct. Therefore, the trial court did not err in denying summary judgment to the appellant on the issue of the notice requirement.

5. The affidavit of Raven, stating what Mr. Williams told him with regard to his (Williams) being aware of the debt owed by the subcontractor, is not hearsay, but is direct evidence of the fact in issue: his own notice of the claim. The question is not whether Williams

was telling the truth when he stated to Raven that he had already notified the bonding company, for this is not the fact in issue. If the jury determines that *Raven* is telling the truth — that Williams made these statements, then necessarily Williams had notice of the claim. *Momon v. State*, 249 Ga. 865 (294 SE2d 482). See *Harrell v. State*, 241 Ga. 181 (243 SE2d 890).

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 24, 1988 —
REHEARING DENIED MARCH 24, 1988 — 

*John A. Howard, Mary M. Brockington*, for appellant.
*John V. Burch, J. Greg Tharp*, for appellee.