560 A.2d 592

**ATLANTIC SEA-CON. LTD., et al.**

v.

**ROBERT DANN COMPANY.**

**No. 1809 Sept. Term, 1988.**

Court of Special Appeals of Maryland.

July 6, 1989.
Certiorari Granted Nov. 28, 1989.

---

162

Fulton P. Jeffers (Christopher F. Davis and Hearne & Bailey, P.A., on the brief), Salisbury, for appellants.

A. Gillis Allen, II (John C. Seipp and Adkins, Potts & Smethurst, on the brief), Salisbury, for appellee.

Argued before GILBERT, C.J., and KARWACKI and WENNER, JJ.

KARWACKI, Judge.

The Maryland State Highway Administration (Highway Administration) on March 18, 1986, awarded one of the appellants, Atlantic Sea–Con, Ltd. (Atlantic), a $3,243,885

contract to fortify the foundation of the U.S. Route 50 bridge leading into Ocean City against erosion caused by the swift currents prevailing at the Sinepuxent Bay inlet from the Atlantic Ocean. In accordance with Maryland's "Little Miller Act," State Fin. & Proc.Code Ann. §§ 17–101 through 17–110, Atlantic, as the State's prime contractor, posted a payment bond in the amount of the total contract price, with Federal Insurance Co., another appellant, as its surety.

On May 12, 1986, Atlantic sent a purchase order to Marine Structural Applications, Inc. (MSA) for approximately 56,200 tons of rock needed for the project. Under the terms of the agreement, this rock was to be mined from a state-approved quarry and delivered to Snow Hill in Worcester County, where a trucking company would then load the rock and transport it to the construction site. MSA elected to purchase the stone from an approved quarry located in Occoquan, Virginia. At that site, MSA sorted the rock so that it would match contract specifications and loaded it on barges on the Potomac River. MSA's tug boats would then tow the barges to the destination point at Snow Hill. The final cost of MSA's performance was $385,708.17, or 11.9% of the total contract price.

In August of 1986, after one of its tug boats became disabled, MSA contracted with the Robert Dann Company, the appellee, for its towing services. From August 11 to August 31, appellee's boats operated by appellee's employees tugged MSA's rock-filled barges from Occoquan to Snow Hill without incident. When MSA went bankrupt in the fall of 1986, appellee sought reimbursement for its outstanding bill of $37,100.00 from the payment bond posted by Atlantic. Appellants refused payment, contending that appellee was not covered by the bond. This litigation ensued.

Appellee filed suit on July 20, 1987 in the Circuit Court for Worcester County to collect its unpaid tugging fees from appellants' payment bond. The parties agreed upon all of the facts giving rise to appellee's claim. The only

issue in dispute was whether the appellee qualified for protection under the statutory bond. Perceiving this question to be one of fact, the court denied appellants' motion for summary judgment and its motions for judgment.[1] The jury, in turn, concluded that appellee was protected by appellants' bond and returned a verdict in favor of the appellee.

In their appeal from the judgment entered on that verdict, appellants pose the following questions for our review:

 I. Did the trial court err in denying appellant's [sic] motion for summary judgment and submitting to the jury the issue of whether the Little Miller Act afforded appellee payment security; and

 II. Was appellee, as a matter of law, among the class of persons that the Little Miller Act was designed to protect?

While we agree with appellants that the evidence failed to generate any material disputed facts below, we nevertheless hold that appellee was entitled as a matter of law to coverage under appellants' payment bond. Consequently, we shall affirm the judgment of the trial court.

Contractors on all construction projects exceeding $50,000 which are funded by "a public body" must furnish security to "guaranty payment for labor and materials...." State Fin. & Proc. Law Ann. §§ 17–103(a) and 17–101(b) (1988 Repl.Vol.).[2] This security usually takes the form of a bond "executed by a surety company authorized to do business in this State." § 17–104(1). Section 17–108 in its pertinent parts defines the scope of protection under that security as follows:

---

**1.** Appellants moved for judgment after appellee had presented its evidence and at the close of all of the evidence at trial.

**2.** Section 17–101(d) provides:
 *Public body.*—"Public body" means:
 (1) the State;
 (2) a county, municipal corporation, or other political subdivision;
 (3) a public instrumentality; or
 (4) any governmental unit authorized to award a contract.

(a) *In general.*—Subject to subsection (b) of this section, a supplier may sue on payment security if the supplier:

(1) supplied labor or materials in the prosecution of work provided for in a contract subject to this subtitle; and

(2) has not been paid in full for labor or materials within 90 days after the day that the person last supplied labor or materials for which the claim is made.

(b) *Payment owed by subcontractor.*—(1) A supplier who has a direct contractual relationship with a subcontractor or sub-subcontractor of a contractor who has provided payment security but no contractual relationship with the contractor may sue on the security if the supplier gives written notice to the contractor within 90 days after the labor or materials for which the claim is made were last supplied in prosecution of work covered by the security.[3]

. . . . .

Putting aside for the moment the issue of whether the trial court erred in permitting the jury to determine whether appellee could sue on appellants' bond, we address the more general, and in this case, dispositive issue of whether the court articulated the proper standard for assessing a claimant's standing to sue under a Little Miller Act bond. This is an issue of pure statutory construction which is a matter for the court's resolution. *See Mangum v. Md. St. Bd. of Censors,* 273 Md. 176, 192–93, 328 A.2d 283 (1974) ("[c]onstruing statutes in connection with applying statutory provisions to specific cases, is a large and essential part of the judicial process.")

In construing the meaning and scope of any statute, courts seek to ascertain and effectuate legislative intent, the most useful indicator of which is the actual statutory language. *Rucker v. Comptroller of the Treasury,* 315 Md. 559, 564–65, 555 A.2d 1060 (1989); *Dean v. Pinder,* 312

---

**3.** Appellants do not contend that appellee failed to give the required notice to Atlantic.

Md. 154, 161, 538 A.2d 1184 (1988). Such language is to be given its ordinary, conventional meaning, and should be read in the context of the statute's overarching goals and purposes. *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986); *Comptroller of the Treasury v. Fairchild Industries, Inc.*, 303 Md. 280, 284–87, 493 A.2d 341 (1985). Only when the statutory language is ambiguous will the courts look beyond the text to other aids of construction. *Ryder Truck Lines, Inc. v. Kennedy*, 296 Md. 528, 536, 463 A.2d 850 (1983); *Bledsoe v. Bledsoe*, 294 Md. 183, 189, 448 A.2d 353 (1982).

 At the heart of the instant dispute lies a fundamental determination of the import of § 17–108, *supra*. A number of courts, construing language identical or similar to that of § 17–108(b)(1), have held that this provision restricts the class of persons entitled to sue on a public works bond to those who stand in a proximate relationship with the prime contractor. *See, e.g., J.W. Bateson Co., Inc. v. U.S.*, 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978); *Clifford F. MacEvoy Co. v. U.S.*, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); *U.S. v. Blount Bros. Constr. Co.*, 168 F.Supp. 407 (D.Md.1958) (all construing the federal Miller Act). Proponents of this interpretation thus hold that subsection (b)(1), or its equivalent, is essentially a standing requirement, designed to insulate the prime contractor from the claims of remote suppliers.[4] The statute, under this interpretation, defines the proximate relationship as any direct contractual relationship with a "subcontractor or sub-subcontractor." A "subcontractor," in turn, is "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the

---

4. The trial court apparently adopted this interpretation of the statute upon the stipulation of the parties. We note, however, that while the courts must respect and give effect to stipulations concerning the parties' intentions and other evidential matters, *C & K Lord, Inc. v. Carter*, 74 Md.App. 68, 94, 536 A.2d 699 (1988), they need not abide by stipulations as to the meaning of a statute. *Winter v. O'Neill*, 155 Md. 624, 634, 142 A. 263 (1928); *see* Annot., 92 A.L.R. 663 (1934).

original contract, thus excluding ordinary laborers and materialmen." *Clifford F. MacEvoy Co., supra,* 322 U.S. at 109, 64 S.Ct. at 894.[5]

Other courts hold that the statute's only restrictions on the class of potential bond claimants appear in subsection 17–108(a), which grants standing to those who have supplied labor or materials in the prosecution of work and have not been paid within 90 days of their performance. Not coincidentally, this provision mirrors the broad criteria under the mechanics' lien statute for determining whether a supplier has standing to assert a lien. *See* Md.Real Prop. Code Ann. § 9–102; *Evans Marble Co. v. Intnt'l Trust Co.,* 101 Md. 210, 60 A. 667 (1905).

According to the latter interpretation, subsection (b)(1) is merely a notice requirement for claimants who, though within the statute's protective parameters, are nevertheless remotely associated with the general contractor. *See, e.g., Huddleston Concrete Co. v. Safeco Ins. Co.,* 186 Ga.App. 531, 368 S.E.2d 117 (1988); *Peters v. Hartford Accident & Indem. Co.,* 377 Mass. 863, 389 N.E.2d 63 (1979); *Richards & Conover Steel Co. v. Nielsons,* 755 P.2d 644 (Okla.1988). As the Court explained in *Huddleston Concrete Co.,* "The purpose of the notice requirement is to protect the [general] contractor, so that he may with impunity pay subcontractors if no notice of claims by materialmen and suppliers has been filed." *Huddleston Concrete Co., supra,* 186 Ga.App. at 533, 368 S.E.2d 117. *Cf. Dickerson Lumber Co. v. Herson,* 230 Md. 487, 491, 187 A.2d 689 (1963) ("The Mechanics' Lien Law seeks to protect materialmen who are not in a position to protect themselves if the owner negligently pays the contractor *without first ascertaining that the materialmen have been paid"*) (emphasis supplied; citations omitted). Indeed, as a practical matter, the general contractor's only means of learning about the existence of these claims is through formal notice.

---

**5.** The jury in the case *sub judice,* applying this standard in rendering its special verdict, characterized MSA as a subcontractor, thus entitling MSA's contractual supplier, appellee, to recovery under the bond.

We believe that the second interpretation espoused by a number of our sister states is more consonant with the general purposes and history of our Little Miller Act. That interpretation, moreover, is in keeping with our pattern of liberally construing the Act "to protect persons whose labor and materials go into government projects." *Stauffer Constr. Co., Inc. v. Tate Engineering, Inc.*, 44 Md.App. 240, 245, 407 A.2d 1191 (1979), *cert. denied*, 286 Md. 753 (1980) (citation omitted). *See also Montgomery County Bd. of Educ. v. Glassman Constr. Co.*, 245 Md. 192, 201, 225 A.2d 448 (1967); *Mullan Contracting Co. v. International Business Machines Corp.*, 220 Md. 248, 258–59, 151 A.2d 906 (1959); *Allied Building Products Corp. v. United Pacific Ins. Co.*, 77 Md.App. 220, 226, 549 A.2d 1163 (1988); *Viscount Constr. Co., Inc. v. Dorman Elec. Supply Co., Inc.*, 68 Md.App. 362, 367, 511 A.2d 1102 (1986).

In determining the Legislature's intent, it is useful to trace the development of Maryland's present public works bond statute. After creating the State Roads Commission in 1908, ch. 141 of the Laws of 1908, the Legislature by ch. 721 of the Acts of 1910 enacted the Little Miller Act's earliest precursor, which we shall refer to as the highway construction statute. It provided, *inter alia*, that:

> In all cases where the contract for work and materials shall be given out after competitive bidding, the successful bidder shall promptly execute a formal contract to be approved as to its form, terms and conditions by said Commission, and shall also execute and deliver to said Commission a good and sufficient bond to be approved by said Commission to the State of Maryland in not less than the amount of the contract price. In no case shall any such bond be approved or accepted unless the obligators bind themselves therein to the payment of all just debts for labor and materials incurred by the bidder in the construction and improvement of the road contracted for.

The Court in *American Fidelity Co. v. State*, 128 Md. 50, 97 A. 12 (1916), recognized that the mischief which this

statute sought to remedy arose from the inability of laborers and materialmen on public projects to secure their payment by attaching state-owned property. In the words of the Court, absent an alternative remedy, these suppliers "could acquire no protection against insolvent contractors by the lien laws of this State." *Id.,* 128 Md. at 59, 97 A. 12. Thus, by requiring the execution of a payment bond, the Legislature sought to place suppliers of labor and materials on public projects in the same secure position they would have occupied had they been engaged in a private construction contract, the only difference being the *form* of the available security.

Indeed, because a supplier's participation in a public contract was to affect only the form and not the substance of its remedy, the Court in delineating the scope of protection under the bond applied the criterion traditionally used to identify proper lienors under a private contract. A supplier would thus have standing to sue on the bond so long as it contributed "labor" or "materials" in the prosecution of the construction contract.[6] For instance, in *London & Lancashire Indem. Co. v. State,* 153 Md. 308, 138 A. 231 (1927), a case closely analogous to the one at bar, the Maryland State Roads Commission awarded a contract to the Patapsco Engineering and Contracting Company (Patapsco) for the improvement of a road located in Montgomery County. In compliance with the highway construction statute, the general contractor furnished a payment bond. Patapsco also contracted with the Smoot Sand and Gravel Company (Smoot) to supply the sand and gravel necessary for the job. Smoot, in turn, engaged Frank R. Hammond (Hammond) to transport these raw materials from Smoot's yard in Washington, D.C. to the construction site in Montgomery County.

---

6. *See Evans Marble Co. v. Intnt'l Trust Co.,* 101 Md. 210, 60 A. 667 (1905) (supplier who prepared stone for a materialman held to be entitled to a mechanics' lien since he furnished labor with regard to the contract). *See generally* Cutler & Shapiro, *The Maryland Mechanics' Lien Law—Its Scope and Effect,* 28 Md.L.Rev. 225, 227–31 (1968).

In analyzing whether Hammond was entitled to recover under the bond, the Court stated that the " 'manifest purpose of the statute [is] to require that labor and materials actually contributed to the construction of the public building shall be paid for and to provide security to that end.' " *Id.*, 153 Md. at 310–11, 138 A. 231 (quoting *Hill v. Amer. Surety Co.*, 200 U.S. 197, 203, 26 S.Ct. 168, 50 L.Ed. 437 (1906)). Having concluded that Hammond contributed labor to the highway construction project, the Court held that he was entitled to the security provided by the general contractor. *See State v. National Surety Co.*, 148 Md. 221, 128 A. 916 (1925) (applying the same test, but concluding that the lessor of a steam shovel which was used in the construction of a highway did not contribute labor or materials and consequently was not covered by the payment bond).[7]

In 1918, the General Assembly expanded the breadth of the highway construction statute's bond provision by making it applicable to all State-funded construction projects. Ch. 127, Acts of 1918. Although the language of the enactment closely resembled that of the highway construction statute, it contained an additional clause which, according to the Court in *Hospital for the Women of Md. v. United States Fidelity & Guaranty Co.*, 177 Md. 615, 11 A.2d 457 (1940), limited the class of persons entitled to protection under the required payment bond. Specifically, the statute required prime contractors to post a bond for the "payment of all just debts for labor and materials incurred, through subcontract or in any other manner, *by or in behalf of the person, firm or corporation to whom such contract has been given....*" Md.Code Ann. (1918 Supp.) Art. 90, § 13 (emphasis supplied).

In *Hospital for the Women of Md.*, the private owner of a hospital hired the Cummins Construction Corp. (general contractor) to expand and make certain alterations to the

---

7. For the parallel case under the mechanics' lien law, see *Giles & Ransome, Inc. v. First Nat'l Realty Corp.*, 238 Md. 203, 208 A.2d 582 (1965) (lessor of earth-moving equipment held not to be entitled to a mechanics' lien).

hospital facilities. As a condition of the contract, the general contractor executed a performance and payment bond, with United States Fidelity and Guaranty Co. as its surety. One of the conditions of the bond was couched in the precise language appearing in the State construction bond statute. It provided that the obligors "shall pay all just debts for labor and materials incurred through subcontract or in any other manner, by or on behalf of the principal."[8] With this bond posted, the general contractor engaged a subcontractor to perform work at the construction site. In turn, the subcontractor hired, but never paid, Robert S. Green, Inc., the claimant, to furnish the necessary materials for the subcontractor.

In denying the claimant standing to sue on the general contractor's payment bond, the Court abandoned the analysis used by the courts under the highway construction and mechanics' lien statutes, reasoning that:

> effect must be given to the words "incurred through sub-contractors, or in any manner, by or on behalf of the principal." The "by or in behalf of the principal" is a restrictive term. If the meaning and intent of the bond was to cover all just debts for labor and material incurred through sub-contractors or in any other manner, as contended for by the plaintiff, the clause should have stopped there, but it added the definitely restrictive provision limiting the above to those incurred "by or on behalf of the principal." These words can not be rejected as surplusage. They restrict the obligation to debts for labor and material incurred by and on behalf of the principal. The debts in the present case were contracted by the subcontractor, or by and on behalf of himself as sub-contractor, and not "by or on behalf of the principal."

---

**8.** The Court's interpretation of this contractual language presumably would apply with equal force in a statutory bond case since the language appearing in both documents was identical. Moreover, the Court in *Hartford Accident & Indem. Co. v. W. & J. Knox Net & Twine Co.*, 150 Md. 40, 45–46, 132 A. 261 (1926), observed that "there is no distinction in principle between" conventional and statutory bonds.

*Hospital for the Women of Md., supra,* 177 Md. at 620, 11 A.2d 457. The Court thus held that the bond's language "limit[s] the liability of the contractor and surety to the payment of obligations for labor and material used in the construction, *incurred through transactions traceable to the direct authorization of the principal." Id.* at 622, 11 A.2d 457 (emphasis supplied).

Not until 1959 did the General Assembly, by ch. 10 of the Laws of 1959, supplant Art. 90, § 13 with the Little Miller Act. The underlying bill, recommended by the Budget and Finance Committee of the Legislative Council (Item No. 134), contained an explanatory note stating that the "main purpose of the bill is to provide greater protection to sub-contractors on contracts awarded by the State...." Although this statement does not expressly indicate the Legislature's intention to overturn the Court's holding in *Hospital for the Women of Md.* and to revive the precedents which afforded coverage coextensive with that under the mechanics' lien law, we think that this indeed was the Legislature's aim.

Lending support for this position is *Montgomery Co. Bd. of Ed. v. Glassman Constr. Co.,* 245 Md. 192, 225 A.2d 448 (1967), in which the Court of Appeals remarked of the Little Miller Act:

> There is no mechanic's lien for work done for or materials supplied to public buildings, but the bond required by the statute is intended to give substantially similar protection. The purpose of the bond, based on the statute, is to protect subcontractors and materialmen on State or other public projects where they have no lien on the work done.

*Id.* at 201, 225 A.2d 448 (citations omitted).

Similarly, the Court in *Williams Constr. Co., Inc. v. Constr. Equip., Inc.,* 253 Md. 60, 67, 251 A.2d 864 (1969), founded its interpretation of the Little Miller Act's scope of protection on "the symmetry which has existed for years between rights under the mechanics' lien law and rights

under a public works bond." *See Peerless Ins. Co. v. Prince George's County*, 248 Md. 439, 442, 237 A.2d 15 (1968) (close analogy between Little Miller Act and mechanics' lien statute); *Ruberoid Co. v. Glassman Constr. Co.*, 248 Md. 97, 106, 234 A.2d 875 (1967); *Allied Building Products Corp., supra*, 77 Md.App. at 226, 549 A.2d 1163.

Ironically, we have come full circle in relying on precedents decided under the highway construction statute, *e.g.*, *London & Lancashire Indem. Co. v. State, supra*, 153 Md. 308, 138 A. 231, which recognized that the legislature in enacting the payment bond statute sought not to penalize suppliers for their participation in public construction projects by depriving them of the security to which they otherwise would be entitled under a private construction project but to protect them by providing an alternative form of security.

We note that this construction:

furthers the public policy of ensuring security for all laborers working at a public project site, and thereby promotes the unhampered completion of such projects.

*Peters v. Hartford Accident & Indem. Co., supra*, 377 Mass. at 872, 389 N.E.2d 63. Moreover,

[t]he result we reach does not necessarily impose burdensome liabilities on sureties for a long chain of relationships. General contractors may refuse to deal with subcontractors who do not indemnify them against remote claims, and they may even require a bond from each contractor.

*Id.* at 871, 389 N.E.2d 63. *See Richards & Conover Steel v. Nielsons, supra*, 755 P.2d at 647.

We are mindful that our holding is at odds with a substantial line of federal authority, emanating from the Supreme Court's decision in *Clifford F. MacEvoy Co. v. U.S., supra*, which construes similar language in the Miller Act, 40 U.S.C. 270b, as restricting the class of claimants entitled to sue under a payment bond. *See* Annot., 79 A.L.R.2d 855 (1961). Our fidelity, however, is not to these decisions but to the intent of our Legislature. *See Mundey v. Unsat-*

*isfied Claim & Judgment Fund Bd.,* 233 Md. 169, 173, 195 A.2d 720 (1963) (legislature cannot be regarded as having impliedly adopted a foreign jurisdiction's post-enactment construction of its own parallel statute). We previously have expressed our willingness to depart from federal decisions construing the federal Miller Act "where the court believes the purpose of the State statute differs." *General Federal Constr., Inc. v. D.R. Thomas, Inc.,* 52 Md.App. 700, 709, 451 A.2d 1250 (1982); *see Williams Constr. Co. v. Constr. Equip., Inc., supra,* 253 Md. at 67, 251 A.2d 864; *State v. Nat'l Surety Co.,* 148 Md. 221, 128 A. 916 (1925). This is such a case.

Since it is undisputed that appellee supplied labor in the prosecution of Atlantic's contract with the Highway Administration, and was not paid within 90 days of its performance, it was entitled as a matter of law to recover against appellants' payment bond. *Diener v. Cubbage,* 259 Md. 555, 563, 270 A.2d 471 (1970). The court's error in submitting that legal issue to the jury was harmless since its verdict was in favor of appellee, and therefore, the judgment on that verdict in favor of appellee will not be disturbed.

JUDGMENT AFFIRMED;
COSTS TO BE PAID BY THE APPELLANTS.