582 A.2d 981

**ATLANTIC SEA–CON, LTD. et al.**

v.

**ROBERT DANN COMPANY.**

No. 131, Sept. Term, 1989.

Court of Appeals of Maryland.

Dec. 10, 1990.

Fulton P. Jeffers (Christopher F. Davis, Hearne & Bailey, P.A., Salisbury on brief), for petitioners.

John C. Seipp (A. Gillis Allen, II, Adkins, Potts & Smethurst, Salisbury, on brief), for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS * and CHASANOW, JJ.

CHASANOW, Judge.

On March 18, 1986, Petitioner, Atlantic Sea–Con, Ltd. (Atlantic), entered into a contract with the State of Maryland for scour protection at the Route 50 bridge in Ocean City, Maryland. The work covered under the contract included, among other things, the placement of stone and rock (riprap) under and adjacent to the bridge, as well as along the bulkhead and shore. Atlantic was responsible for furnishing riprap that met State guidelines and State specifications, as well as for installing it at the Ocean City job site. Pursuant to the "Maryland Little Miller Act," Maryland Code (1985), State Finance and Procurement Article, § 13–501,[1] Atlantic posted a payment bond in the amount of the total contract price with Federal Insurance Company, Co–Petitioner, as its surety.

On May 12, 1986, Atlantic issued a purchase order for the rock needed for the Route 50 bridge project to Marine Structural Applications, Inc. (MSA). MSA was to deliver the rock to a location in Snow Hill, Maryland, from where Jarmon's Construction would truck the riprap to the job site

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision and adoption of this opinion.

1. At the time of the filing of the payment bond, the applicable version of the Maryland Little Miller Act was codified at Maryland Code (1985), State Finance and Procurement Article, § 13–501. The current version of the Maryland Little Miller Act is found at Md.Code (1985, 1988 Repl.Vol.), State Fin. & Proc. Art., §§ 17–101 to 17–110. *See infra* note 2 for a brief history of the Act.

in Ocean City. MSA purchased the rock from an approved quarry in Occoquan, Virginia. At that quarry, MSA sorted the riprap according to contract specifications and loaded it onto barges for transport from Occoquan to Snow Hill via the Potomac River, Chesapeake Bay, and Pocomoke River. In delivering the rock to Snow Hill, MSA initially used its own barges and tugboats.

When one of MSA's tugboats failed, MSA contracted with the Respondent, Robert Dann Company (Dann), for towing services. From August 11 to August 31, Dann tugged MSA's barges carrying the riprap from Occoquan to Snow Hill. Dann billed MSA for its services rendered, but MSA never paid. In the fall of 1986, MSA filed for bankruptcy and Dann filed suit for payment under Atlantic's payment bond for its towing services in the amount of $37,100.00. Atlantic refused to pay Dann's claim, contending that Dann was not entitled to recover under the Maryland Little Miller Act[2] because MSA, the entity with which Dann had contracted, was an ordinary material supplier and not a subcontractor of Atlantic.

---

2. In 1918, Maryland enacted a bond statute requiring that performance bonds be posted for all construction contracts with the State. Chapter 127 of the Laws of 1918. This statute was Maryland's version of the federal Heard Act, 28 Stat. 278, 40 U.S.C. § 270, passed in 1894. *See Williams Constr. v. Constr. Equip.*, 253 Md. 60, 64 n. 4, 251 A.2d 864, 866 n. 4 (1969). The Heard Act was superseded in 1935 by the enactment of the Miller Act, 40 U.S.C. §§ 270a to 270d (1988), which requires two bonds: "a performance bond for the protection of the government and a payment bond which protected the subcontractor, and his workmen and suppliers...." *Williams Constr.*, 253 Md. at 66, 251 A.2d at 867.

Maryland adopted the Maryland Little Miller Act, patterned after the federal Miller Act, in 1959. Ch. 10 of the Laws of 1959. The statute was codified at Md.Code (1957, 1964 Repl.Vol.), Article 90, § 11. When the Maryland legislature revised and recodified all real property laws in 1972, the Little Miller Act was recodified as Md.Code (1957, 1972 Repl.Vol.), Article 21, § 9–112. Ch. 349 of the Laws of 1972. In 1985, the statute was transferred to State Fin. & Proc. Art., § 13–501. Ch. 12 of the Laws of 1985. It was renumbered in 1986 and became State Fin. & Proc. Art., § 12–201. Ch. 840 of the Laws of 1986. In 1988, the Maryland Little Miller Act was revised without substantive change and moved to State Fin. & Proc. Art., §§ 17–101 to 17–110, where it is found today. Ch. 48, § 2 of the Laws of 1988.

Atlantic filed a motion for summary judgment before trial and made a motion for judgment at trial alleging there was no dispute as to any material fact and that it was entitled to judgment as a matter of law. The trial judge denied the motions and submitted the case to the jury. The court instructed the jurors that if they found that MSA was a subcontractor of Atlantic, then they should find for Dann; but if they found that MSA was an ordinary material supplier of Atlantic, they should find in favor of Atlantic. The jury found that MSA was a subcontractor of Atlantic, and a verdict was returned in favor of Dann.

Upon appeal, the Court of Special Appeals initially noted that the issue of MSA's status as a subcontractor or materialman should not have been submitted to the jury because "the evidence failed to generate any material disputed facts...." The intermediate appellate court then held that, even though Dann was a supplier of labor to a materialman, Dann was "nevertheless" entitled to coverage under Atlantic's payment bond as a matter of law. *Atlantic Sea–Con v. Dann Co.*, 80 Md.App. 161, 164, 560 A.2d 592, 593 (1989). We agree that there was no dispute of material facts and that, as a matter of law, MSA was a materialman rather than a subcontractor. We granted certiorari, however, to review the Court of Special Appeals' determination that one who supplies labor or materials to a materialman is entitled to the protection of the Little Miller Act.

The statutory language at issue in this case was found in section 13–501(c) of the State Fin. & Proc. Art., which is now codified at State Fin. & Proc. Art., § 17–108.[3] Section 13–501(c) states:

---

**3.** State Fin. & Proc. Art., § 17–108 states in pertinent part:
"(a) *In general.—Subject to subsection (b) of this section, a supplier may sue on payment security if the supplier:*
(1) *supplied labor or materials in the prosecution of work provided for in a contract subject to this subtitle;* and
(2) has not been paid in full for the labor or materials within 90 days after the day that the person last supplied labor or materials for which the claim is made.

"(c) *Suits on payment bonds—Right to institute.—
Every person who has furnished labor or material in
the prosecution of the work provided for in such con-
tract,* in respect of which a payment bond or other
security is furnished under this section and who has not
been paid in full therefor before the expiration of a period
of 90 days after the day on which the last of the labor
was done or performed by him or material was furnished
or supplied by him for which such claim is made, *shall
have the right to sue on the payment bond* or other
security for the amount, or balance thereof, unpaid at the
time of institution of such suit and to prosecute said
action to final judgment and execution for the sum or
sums justly due him; *provided, however, that any per-
son having direct contractual relationship with a sub-
contractor of the contractor, or with any sub-subcon-
tractor of the contractor but no contractual relation-
ship express or implied with the contractor furnishing
said payment bond or other security, shall have a right
of action upon the payment bond* or other security upon
giving written notice to the contractor...." (Emphasis
added.)

As the Court of Special Appeals recognized in its discussion
of this language, there are two clauses dealing with who
may assert a claim under a Little Miller Act bond. Under
the first part of section 13–501(c) (which is now codified at
section 17–108(a)), to acquire a lien one must have supplied
"labor or material in the prosecution of the work." The last
clause of this statute (which is now codified at section
17–108(b)(1)), however, is susceptible to more than one
interpretation. *Atlantic Sea–Con,* 80 Md.App. at 166–67,

---

(b) *Payment owed by subcontractor.—*(1) *A supplier who has a
direct contractual relationship with a subcontractor or sub-subcon-
tractor of a contractor who has provided payment security but no
contractual relationship with the contractor may sue on the security*
if the supplier gives written notice to the contractor within 90 days
after the labor or materials for which the claim is made were last
supplied in prosecution of work covered by the security." (Empha-
sis added.)

560 A.2d at 594–95. It is either a notice requirement or a limitation on who may make a claim on the contractor's bond.

■ The intermediate appellate court construed the last clause of the Little Miller Act as merely a requirement of notice to the principal contractor by claimants as a prerequisite to collection under the payment bond. *Atlantic Sea-Con*, 80 Md.App. at 168, 560 A.2d at 595. This interpretation deviates from the construction accorded a similar provision contained in the federal Miller Act, 40 U.S.C. § 270b(a) (1988),[4] which has been interpreted by the federal courts since 1944 as a limitation restricting the class of persons who have standing to file a claim against a payment bond under the Act. *See J.W. Bateson Co. v. United States ex rel. Bd. of Trustees*, 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978); *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); *U.S. for Use of Morris Const. v. Aetna Cas. Ins.*, 908 F.2d 375 (8th Cir. 1990); *United States v. Blount Brothers Construction Co.*, 168 F.Supp. 407 (D.Md.1958). We conclude that the Maryland Legislature, when it patterned the Maryland Little Miller Act after the federal Miller Act in 1959, intended to import the federal judicial interpretation that this provision restricts the class of persons who may claim under the statute.

---

**4.** The text of 40 U.S.C. § 270b(a) is as follows:
"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under [this Act] ... and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him; *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor...."

When the Little Miller Act was adopted in Maryland, it contained the following explanatory preamble:

"This Bill is recommended by the Budget and Finance Committee of the Legislative Council following a study of Senate Bill No. 91 which was introduced in 1958 by Senator George B. Rasin. The main purpose of the Bill is to provide greater protection to sub-contractors on contracts awarded by the State.... The present law on this subject, it is pointed out, does not adequately cover sub-sub-contractors. The Bill ... is patterned after the Miller Act which has been enacted by the Congress for the Federal Government and is frequently referred to as a 'Little Miller Act.' "

Legislative Council of Maryland, Report to the General Assembly of 1959, at 17 (1959). We presume the Maryland Legislature was aware that, in the years between 1935 when the federal Miller Act was passed and 1959 when it adopted the Maryland Little Miller Act, the federal Act was the subject of judicial interpretation in the federal courts. *See Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 60, 507 A.2d 172, 178 (1986). Certainly, if the Maryland Little Miller Act was "patterned after" the federal Miller Act, federal authority that existed at the time it was enacted should be persuasive in interpreting the statute. *Faulk v. State's Attorney for Harford Co.,* 299 Md. 493, 506, 474 A.2d 880, 887 (1984). Our conclusion that the last clause is a limitation—not a notice requirement—is further bolstered by the fact that in 1988, when the Little Miller Act was last revised, subsection 17–108(a), which grants power to claim under the statute, is expressly made "subject to" subsection 17–108(b)(1), which is the provision we now construe as a limitation.[5]

In order to determine the scope of protection afforded by the Maryland Little Miller Act to those who supply labor or materials to public construction projects, we must resolve two issues. We have resolved the first issue by determin-

---

5. *See* note 3, *supra.*

ing that the Legislature, when it enacted the Little Miller Act, intended to restrict its coverage to persons who contract directly with the contractor, a subcontractor, or a sub-subcontractor. We must now determine how the Legislature intended that we construe the terms "subcontractor" and "sub-subcontractor."

At the outset, we should distinguish between "materialman" and "subcontractor." A meaningful analysis of the Maryland Little Miller Act requires that we emphasize that these two words are not interchangeable. With regard to the federal Miller Act, "the Supreme Court indicated that the word 'subcontractor' as used in the Miller Act is to be interpreted in its technical sense and was intended by Congress to distinguish a subcontractor from either a laborer or material supplier." *United States, etc. v. Lane Const. Corp.*, 477 F.Supp. 400, 410 (M.D.Pa.1979) (citing *MacEvoy*). *MacEvoy* recognized that the framers of the Act "had in mind a clear distinction between subcontractors and materialmen" when they formulated the Miller Act. 322 U.S. at 109, 64 S.Ct. at 894, 88 L.Ed. at 1168. A materialman is "[a] person who has furnished materials or supplies used in the construction or repair of a building, structure, etc." *Black's Law Dictionary* 881 (5th ed. 1979). Generally, a person supplying labor or materials does so as a result of some sort of contractual relationship. An evaluation of coverage under the Little Miller Act, however, requires a determination of whether that contractual relationship elevates the materialman to the status of a subcontractor. "Whether a person is a materialman or a subcontractor is determined by the nature of his undertaking." 13 *Couch on Insurance 2d*, § 47:239 (rev. ed. 1982). The precise definition of subcontractor will be explored in depth in this opinion. For clarity's sake, we stress that the word "materialman" is used in this opinion as a term of art to denote one who supplies labor or materials but who does not qualify as a subcontractor.

Historically, when interpreting the Maryland Little Miller Act, we have analogized the Act with the Maryland mechan-

ics' lien statute, *Williams Constr. v. Constr. Equip.*, 253 Md. 60, 67, 251 A.2d 864, 868 (1969); *Peerless v. Prince George's County*, 248 Md. 439, 441, 237 A.2d 15, 17 (1968); *Montgomery County v. Glassman*, 245 Md. 192, 201, 225 A.2d 448, 453–54 (1967), and we have looked to federal cases interpreting the Miller Act for guidance. *Ruberoid v. Glassman*, 248 Md. 97, 106, 234 A.2d 875, 880 (1967); *Montgomery County v. Glassman*, 245 Md. at 202, 225 A.2d at 454. In this case, an analogy of the Little Miller Act to the mechanics' lien statute is not helpful.

Maryland case law on the issue of whether one who supplies labor or materials to a materialman would be entitled to a mechanics' lien is sparse. A majority of the states that have decided the issue have held that a materialman of a materialman is not entitled to a mechanics' lien.[6] We have found one Maryland Court of Appeals case which involves a seemingly remote supplier of materials, *5500 Coastal Hwy. v. Elec. Equip. Co.*, 305 Md. 532, 505 A.2d 533 (1986), but this case is not clearly determinative of the issue before us. In *Coastal Hwy.*, two materialmen sought to place mechanics' liens against a condominium building in Ocean City, Maryland, based on materials they had supplied

---

**6.** The following states have held that a material supplier of a material supplier is not entitled to recover under the state's mechanics' lien laws: *Safeco Ins. Co. of Am. v. W.B. Browning Const.*, 886 F.2d 807 (6th Cir.1989) (applying Kentucky law); *Valley Metal Works v. A.O. Smith–Inland, Inc.*, 264 Ark. 341, 572 S.W.2d 138 (1978); *Piping Specialties Co. v. Kentile, Inc.*, 229 Cal.App.2d 586, 40 Cal.Rptr. 537 (1964); *Schneider v. J.W. Metz Lumber Co.*, 715 P.2d 329 (Colo.1986); *Porter Coatings v. Stein Steel & Supply Co.*, 157 Ga.App. 260, 277 S.E.2d 272, *aff'd.* 247 Ga. 631, 278 S.E.2d 377 (1981); *City of Evansville v. Verplank Concrete*, 400 N.E.2d 812 (Ind.App.1980); *Leonard B. Hebert, Jr. & Co. Inc. v. Kinler*, 336 So.2d 922 (La.App.1976); *Wickes Lumber v. Coleman Village, Inc.*, 111 Mich.App. 115, 314 N.W.2d 541 (1981); *Ideal Basic Industries v. Juniata Farmers*, 205 Neb. 611, 289 N.W.2d 192 (1980); *Ronald A. Coco, Inc. v. St. Paul's Methodist Church*, 78 N.M. 97, 428 P.2d 636 (1967); *Kingston Trust Company v. State*, 57 Misc.2d 55, 291 N.Y.S.2d 208 (1968); *Botzum Bros. Co. v. Brown Lumber Co.*, 104 Ohio App. 507, 5 Ohio Op.2d 239, 150 N.E.2d 485 (1957); *Farwest Steel v. Mainline Metal Works*, 48 Wash.App. 719, 741 P.2d 58 (1987); *American Buildings Co. v. Wheelers Stores*, 585 P.2d 845 (Wyo.1978).

to a modular home builder who assembled the modular units in Delaware and transported them to Maryland for incorporation into the completed structure. In deciding that the materialmen were entitled to a mechanics' lien, this Court concluded that the "claims here were for 'materials furnished for or about the building....'" *Id.* at 540, 505 A.2d at 537. We determined that it was insignificant that the materials were originally delivered in Delaware as long as those materials were ultimately incorporated into the structure. *Id.* The decision did not rest on a determination of the status of the modular home builder with whom they had dealt as either a materialman or a subcontractor. That was not an issue in the case, and it is not clear from the facts whether the modular home builder was a subcontractor or merely a materialman.

Although the Court of Special Appeals cites *London Etc. Indemnity Co. v. State,* 153 Md. 308, 138 A. 231 (1927), as a Maryland mechanics' lien case which is analogous to the case at bar, *Atlantic Sea–Con,* 80 Md.App. at 169, 560 A.2d at 596, we do not find *London* authoritative. The *London* Court ruled that a hauler of sand and gravel was entitled to sue for services rendered under the general contractor's bond pursuant to the Maryland Highway Construction Act, but the hauler of sand and gravel in *London* had a direct contractual relationship with the principal contractor and delivered the material directly to the job site. The relationship was not remote.

While the public policies underlying the Little Miller Act and the mechanics' lien statute coincide, the scope of our review must center not on policymaking but on statutory construction of the particular act under consideration. The language of the mechanics' lien statute differs significantly from the Little Miller Act. As illustrated by *Coastal Hwy.,* a materialman need only show that the materials were supplied "for or about the building" to secure a mechanics' lien. Although the Maryland Little Miller Act provides coverage to those who supply labor or materials "in the prosecution of the work," it contains additional language,

absent from the mechanics' lien statute, which had been interpreted at the time the Little Miller Act was enacted to restrict the class of persons eligible for its protection.

Whereas Maryland mechanics' lien law is unenlightening in this case, federal authority interpreting the federal Miller Act is not only instructive, it is persuasive. The class of persons protected by the federal Miller Act has been well settled since 1944, long before the Maryland Legislature modeled the Little Miller Act after it. In *MacEvoy*, the Supreme Court held that, under the Miller Act, a person supplying materials to a materialman or a government contractor cannot recover on the payment bond executed by the contractor. The Court stated that, although "[o]stensibly the payment bond is for the protection of 'all persons supplying labor and material in the prosecution of the work' and 'every person who has furnished labor or material in the prosecution of the work' is given the right to sue on such payment bond," it could not disregard the limitations imposed by section 270b(a) (which is analogous to our section 17–108(b)(1)). *MacEvoy*, 322 U.S. at 107, 64 S.Ct. at 893, 88 L.Ed. at 1167. Writing for the Court, Justice Murphy stated,

> "The proviso of [§ 270b(a) of the Miller Act], . . . makes clear that the right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act."

*Id.* at 107–08, 64 S.Ct. at 894, 88 L.Ed. at 1168; *see also Morris Const.*, 908 F.2d at 377. The *MacEvoy* Court was persuaded by its recognition that any other interpretation "would lead to the absurd result of requiring notice from

persons in direct contractual relationship with a subcontractor but not from more remote claimants." 322 U.S. at 108, 64 S.Ct. at 894, 88 L.Ed. at 1168.

In interpreting the reach of the statute, *MacEvoy* defined "subcontractor" based upon the "more technical meaning, as established by usage in the building trades," as "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." 322 U.S. at 108–09, 64 S.Ct. at 894, 88 L.Ed. at 1168. The Supreme Court declined to apply the "broad, generic" definition that "a subcontractor includes anyone who has a contract to furnish labor or material to the prime contractor." *Id.* This definition of "subcontractor" was further clarified by the Eighth Circuit Court of Appeals in *Morris Const.:*

"When considered together, *Bateson, MacEvoy,* and [*F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)] stand for the proposition that a company is a subcontractor if: (1) it has contracted to supply labor or material to the prime contractor; and (2) it plays a sufficiently substantial role in the construction project that the general contractor could have negotiated to have the subcontractor assume the risk of the subcontractor's default."

*Morris Const.,* 908 F.2d at 377. According to this refinement "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract," as described in *MacEvoy,* must play a "substantial role" in the construction project to qualify as a subcontractor.

"Practical considerations" also concerned the Supreme Court in *MacEvoy,* which found that many "ordinary" materialmen, including retailers, wholesalers or manufacturers, are involved in large projects, and thus they in turn deal with innumerable sub-materialmen. "To impose unlimited liability under the payment bond to those sub-materialmen

and laborers is to create a precarious and perilous risk on the prime contractor and his surety. To sanction such a risk requires clear language in the statute and in the bond so as to leave no alternative." 322 U.S. at 111, 64 S.Ct. at 895, 88 L.Ed. at 1169.

Other federal cases applying the *MacEvoy* rationale include *Aetna Casualty & Surety Company v. United States*, 382 F.2d 615 (5th Cir.1967) (supplier of materialman had no standing to sue on Miller Act payment bond); *United States v. Lembke Construction Company*, 370 F.2d 293 (10th Cir.1966) (supplier of materialman could not recover under prime contractor's bond); *Eastern Indus. Marketing v. Desco Elec. Supply*, 651 F.Supp. 140 (W.D.Pa.1986) (supplier of supplier not eligible to recover under payment bond); *United States, Hasco Elec. Corp. v. Reliance Ins. Co.*, 390 F.Supp. 158 (E.D.N.Y.1975) (materialman of materialman of subcontractor did not qualify to bring suit on payment bond under Miller Act); *United States v. Wright Contracting Company*, 194 F.Supp. 444 (D.Md.1961) (trucking company that delivered concrete to job site for concrete supplier could not recover under Miller Act payment bond). *See also* 10 Appleman, *Insurance Law and Practice* § 5877 (rev. ed. 1981); 13 *Couch on Insurance 2d* § 47:251 (rev. ed. 1982).

In reviewing the history and legislative intent of the Maryland Little Miller Act, the Court of Special Appeals traced the history of Maryland's public works statute which required contractors on public works projects to post a bond and bind themselves to pay all just debts for labor and materials incurred in the construction. *Atlantic Sea–Con*, 80 Md.App. at 168, 560 A.2d at 595. The court concluded that the legislative purpose of this requirement was to secure laborers and materialmen on public projects who otherwise were not protected against insolvent contractors under the lien laws. *Id.* at 169, 560 A.2d at 596. While we agree that the object of the Maryland Little Miller Act and its predecessors is to protect laborers and materialmen on public projects, that protection is not without limits.

We recognize that the Maryland Little Miller Act was designed to afford greater protection to sub-subcontractors, who were not covered at the time either under the prevailing Maryland bond statute or under the federal Miller Act. Indeed, the only significant deviation of the Maryland statute from the federal Miller Act was the addition of the words "or with any sub-subcontractor of the contractor" in Md.Code (1985), State Fin. & Proc. Art., § 13–501(c). We are not convinced, however, that this extension of the Little Miller Act's protection to persons contracting with "sub-subcontractors" indicates a legislative scheme to expand its scope by redefining subcontractors in the "broad, generic sense" rejected by the Supreme Court in *MacEvoy*. In the words of the statute, a "direct contractual relationship with a subcontractor of the contractor, or with any sub-subcontractor of the contractor" is required. Md.Code (1985), State Fin. & Proc. Art., § 13–501(c). To apply a broad, generic definition of "subcontractor" or "sub-subcontractor" would render the words "direct contractual relationship" nugatory. We also do not believe that the wording of the preamble, that the "main purpose of the Bill is to provide greater protection to sub-contractors on contracts awarded by the State," is intended by the Legislature to broaden its protection to cover remote suppliers of labor and materials to materialmen. The next sentence specifically states, "The present law on this subject, it is pointed out, does not adequately cover sub-sub-contractors."

There are several reasons why we think it would be inappropriate to utilize the definition of "subcontractor" contained in the mechanics' lien statute in interpreting the Little Miller Act. The Legislature, when it enacted the Little Miller Act, did not express an intent that it should coincide exactly with the mechanics' lien statute. While we recognize that both statutes have a similar purpose, their wording significantly differs. When the Little Miller Act was adopted in 1959, the mechanics' lien statute did not define "subcontractor." Nor was there a definitive body of law that would permit one who supplies labor or materials

to a mere materialman to recover under the Maryland mechanics' lien statute. There was at the time authoritative case law defining "subcontractor" in the context of the federal Miller Act.

In declaring that the Little Miller Act was patterned after the federal Miller Act, we believe the Legislature acknowledged the intent of Congress to distinguish between subcontractors and materialmen. We decline to apply the broad definition of "subcontractor" contemplated by the mechanics' lien statute because that definition precludes this distinction. We note that, in 1958, the United States District Court for the District of Maryland decided *Blount Brothers*, which held that "The relationship between a *sub-sub*-subcontractor and a *sub*-subcontractor is one of the 'more remote relationships' referred to by the House Committee and by the Supreme Court in *MacEvoy* as not coming within the coverage of the bond." 168 F.Supp. at 410 (emphasis in original). The Maryland Legislature apparently sought to give additional protection to sub-subcontractors in response to this decision. We believe that they were equally aware that the Supreme Court's prior decisions interpreting the language analogous to that used in the Maryland Act did not give protection to "sub-materialmen" who supply labor or materials to materialmen.

There are practical reasons why the Legislature might want to give protection to those who furnish labor or materials to a subcontractor or a sub-subcontractor but not to those who furnish labor or materials to a materialman. The general contractor has more control over subcontractors and sub-subcontractors who perform a specific portion of the original contract than over mere materialmen. It also would be easier for the contractor to secure a bond from a subcontractor or sub-subcontractor than it would be to secure a bond from a materialman to assure that all suppliers of labor and materials have been paid.

If the legislators' purpose was to eliminate the distinction between subcontractors and materialmen recognized in *MacEvoy*, it could have been so stated. Instead, the Legis-

lature's only modification of the law was to specifically extend its protection to sub-subcontractors and those who contract with sub-subcontractors. We note that in 1976, when the definition of "subcontractor" was added to the mechanics' lien statute, the Legislature rejected the restrictive definition of "subcontractors" as those who contract with "a contractor or with another subcontractor" in favor of the more expansive definition as those who contract with "anyone except the owner or his agent." Chapter 349, § 3 of the Laws of 1976. When the Little Miller Act was revised in 1988, no substantive change was made with regard to the class of persons entitled to its protection. Md.Code (1985, 1988 Repl.Vol.), State Fin. & Proc. Art., § 17–108, Revisor's Note. Although language was added in 1988 defining the term "supplier," the terms "subcontractor" and "sub-subcontractor" remain undefined. Ch. 48, § 2 of the Laws of 1988. We do not believe that the Legislature intended that "supplier" and "subcontractor" and "sub-subcontractor" be synonymous.

■ In the context of the federal Miller Act, the Supreme Court defined "subcontractor" as "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." *MacEvoy*, 322 U.S. at 109, 64 S.Ct. at 894, 88 L.Ed. at 1168. As previously discussed, this definition prevailed in the case law existing at the time our Legislature patterned the Maryland Little Miller Act after the federal Act. We think it likely that, in adding the words "or with any sub-subcontractor of the contractor," the Legislature intended that the terms "subcontractor" and "sub-subcontractor" be defined consistently, the distinction being the prefix. The prefix "sub" is defined as "under, beneath, below ... lower in rank, position, or importance than; inferior or subordinate to ... so as to form a division into smaller or less important parts...." *Webster's New World Dictionary* 1416 (2d ed. 1974). Thus, if a "subcontractor" is "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract,"

then a "sub-subcontractor" is one who performs for and takes from the subcontractor a specific part of the labor or material requirements of the subcontract.

Our interpretation expands the scope of the Little Miller Act protection beyond that of the federal Miller Act as the Legislature intended but still excludes remote relationships. A contractual lineage to the owner must be demonstrated, that is, a subcontractor or sub-subcontractor must fall within the contractual chain directly leading to the owner. Under the federal Miller Act, the chain extends from the owner to the primary contractor to the subcontractor. Under the Maryland Little Miller Act, a link has been added so that the chain consists of the owner, the primary contractor, the subcontractor, and the sub-subcontractor. Protection is provided only to those who supply labor or materials directly to a link in the chain, *i.e.*, to a contractor, subcontractor or sub-subcontractor. Those who supply labor or materials to a mere materialman are not protected.

To further extend the protection of the Maryland Little Miller Act to those who supply materials or labor to mere materialmen could broaden the reach of the statute *ad infinitum*. For example, suppose that a primary contractor purchases materials for use in a public project from a hardware store and the hardware store later files a petition for bankruptcy. The broad interpretation of the Little Miller Act urged by Dann might allow manufacturers, wholesalers, or other intermediary suppliers to claim under the payment bond if they furnished inventory to the hardware store and if they could trace that inventory to the public project. Further, a common carrier who delivered the materials to the hardware store might be covered. We do not believe the Legislature intended that the Little Miller Act should have so broad a sweep.

To summarize, we presume that the Legislature was cognizant, when it enacted and later revised the Maryland Little Miller Act, of the Supreme Court's interpretation of the Miller Act in *MacEvoy* to protect only persons dealing directly with the primary contractor or its subcontractors,

defined in the technical sense and not in the broad, generic sense. We find no evidence of intent either in Maryland legislative history or in prior Maryland case law to deviate from the federal interpretation of this definition. We further believe that the term "sub-subcontractor" should be defined consistently with this definition of "subcontractor." For these reasons, in construing the Maryland Little Miller Act in this case, we will look to the federal Miller Act decisions for guidance.

■ We hold that the portion of the Maryland Little Miller Act which states, "that any person having direct contractual relationship with a subcontractor of the contractor, or with any sub-subcontractor of the contractor but no contractual relationship express or implied with the contractor ... shall have a right of action upon the payment bond," is a standing requirement that restricts the protection of the payment bond to those who supply materials or labor to the primary contractor, its subcontractor, or its sub-subcontractor. The relationship of a supplier of labor or materials to a mere materialman is too remote to collect under the principal contractor's bond.

MSA's status as a subcontractor or a materialman is dispositive of this case. *United States v. Wright Contracting Company, supra,* is persuasive on the issue of MSA's status as either a subcontractor or materialman. In *Wright,* the United States District Court for the District of Maryland addressed the issue of whether a trucking company that delivered concrete products to a job site on behalf of a materialman was entitled to protection under the contractor's Miller Act bond. The court held that "the critical point to be decided is whether, in all the circumstances of the case, the Prestressed Company [the concrete supplier] can properly be considered as a subcontractor or was only a supplier of materials." *Wright,* 194 F.Supp. at 446. In determining that Prestressed Company (Prestressed) was not a subcontractor, the court considered a number of factors: (1) the amount paid to Prestressed was small in relation to the total amount paid for the entire project; (2)

Prestressed was paid in full long before the end of the project (unlike subcontractors from whom a portion is usually withheld until the completion of the job); (3) Prestressed was not asked to supply a payment bond; (4) Prestressed was not designated as a subcontractor in accordance with the terms of the prime contractor's contract with the state; (5) neither Prestressed nor the trucking company seeking to claim under the bond performed any work on the job or at the job site; (6) certified copies of payrolls were not submitted as generally required of subcontractors on government projects; (7) sales tax was paid on the materials supplied; (8) the purchase order was not in the form generally used for a subcontract; (9) payment was required on the basis of monthly requisitions for materials delivered. With regard to the contention that Prestressed was a subcontractor because it was required to conform the materials supplied to the specifications of the government project, the court stated:

> "in orders for material required by Government specifications it is necessary that the materials incorporated into the job by the prime contractor must, of course, conform to the specifications and therefore the reference to the specifications in the proposal and purchase order is merely descriptive of what is to be furnished. Such a description is necessary whether the supplier is a subcontractor or only a material supplier. It does not of itself make the supplier a subcontractor."

*Id.* at 447.

■■■ As stated at the outset, we agree with the Court of Special Appeals' determination that no disputed issues of material fact existed regarding MSA's status as a material supplier. Where the facts are not in dispute, as is the case here, the court must engage in a legal analysis in reaching a conclusion as to whether a party is a subcontractor or a materialman under the Little Miller Act. *See Morris Const.*, 908 F.2d at 378. Testimony adduced at trial indicates that MSA did nothing other than furnish Atlantic with the riprap necessary for the project. The fact that it may

have expended labor in obtaining rock which met certain specifications and delivering it to the destination point is not sufficient to distinguish it as a subcontractor under the technical definition propounded in *MacEvoy. Wright,* 194 F.Supp. at 447. MSA's relationship with the prime contractor arose from a purchase order. It did not perform any work at the job site. MSA charged sales tax on the price of the riprap. Although MSA billed Atlantic separately for the "freight and unloading," testimony adduced at trial indicates that this separate billing for services was done not because MSA was a subcontractor but merely to avoid paying sales tax on that portion of the cost. We note the charge for freight and unloading is based on tonnage and not on time expended, which is the customary method of billing for services. MSA did not furnish a subcontractor's performance bond or file certified copies of its payroll as required of subcontractors by the terms of the contract. Nor was MSA included in Atlantic's list of subcontractors as required by the State; although, Jarmon's Construction, which transported the rock from the delivery point and placed it at the job site, was identified as a subcontractor. For these reasons, we agree with the Court of Special Appeals that this issue should not have been submitted to a jury and that MSA was a materialman. *See also Lembke Construction Company,* 370 F.2d at 295–96 ("All Adams did was deliver concrete. Admittedly, he was to deliver all the concrete needed for the job and the concrete had to conform to the specifications in the prime contract. This does not, however, change Adams' status from a materialman to a subcontractor"); *Brown & Root, Inc. v. Gifford–Hill & Company,* 319 F.2d 65, 66 (5th Cir.1963) (company that, under agreement to supply sand and gravel needs on public project, purchased sand and gravel from third party and delivered it to job site was "no more than a materialman ... as distinguished from a subcontractor, and that the benefits of the Miller Act were unavailable" to it); *Northwest Roads Co. v. Clyde Equipment Co.,* 79 F.2d 771 (9th Cir.1935) (where "contractors entered into agreements with

third persons requiring the latter to furnish the gravel, but to take no other part in the construction," the third persons were mere materialmen and not subcontractors).

We hold that because Dann merely furnished labor to a materialman, it is not entitled to the protection of the Little Miller Act for the reasons stated in this opinion. A surety should not be held liable to one who merely provides a materialman's mode of delivery. Such a remote relationship is precisely what *MacEvoy* refused to sanction as a "precarious and perilous risk on the prime contractor and his surety." 322 U.S. at 111, 64 S.Ct. at 895, 88 L.Ed. at 1169.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AND TO REMAND TO THAT COURT WITH INSTRUCTIONS TO ENTER JUDGMENT IN ACCORD WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ROBERT DANN COMPANY.